No. 100,175

STATE OF KANSAS, *Appellee*, v. MIGUEL MARTINEZ, JR., *Appellant*.

(236 P.3d 481)

Opinion filed July 30, 2010.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Miguel Martinez, Jr., appeals his conviction and sentence for attempted rape of a child under 14 years of age pursuant to K.S.A. 21-3301 and K.S.A. 21-3502—an off-grid crime. He was sentenced to life in prison with a mandatory minimum sentence of 25 years under K.S.A. 21-4643, commonly known as Jessica's Law. The jury acquitted Martinez on the charge of rape of a child under 14 years of age in violation of K.S.A. 21-3502. This court has jurisdiction under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

We affirm the conviction and sentence. But in doing so, we hold it was error to admit into evidence a videotaped interview with the child victim. K.S.A. 22-3433(a)(8) requires the State to provide a defendant with a written transcript of such a video. In this case, the State failed to do so. We reject the State's argument that it substantially complied with this statutory mandate by giving the defense counsel a copy of the video recording. We also reject the excuse that the State did not wish to spend money to have the transcript prepared. But despite this failure to comply, we find the video's admission was harmless error.

We further hold the prosecuting attorney made an improper comment during closing arguments sufficiently serious to constitute prosecutorial misconduct under the first step of our two-step analysis for such questions. But we conclude the improper comment did not deny Martinez his right to a fair trial. Other issues raised are addressed below.

## FACTUAL AND PROCEDURAL BACKGROUND

On Martinez' 21st birthday, some friends and family gathered at his apartment to celebrate. A.G. (the victim), her mother, and her two younger siblings were staying with Martinez and his girlfriend, Melissa Luttrell, who is A.G.'s aunt. A.G. was 5 years old. There was conflicting testimony about how much alcohol Martinez consumed, but it is clear he drank some alcohol while guests were at the apartment. Martinez testified that later in the evening he went to an upstairs bedroom to use a computer to copy a CD he received for his birthday. He denies sexually abusing the child.

A.G. testified she was trying to sleep in the bedroom while Martinez used the computer. A.G. was wearing pajama pants and underwear. She later told the jury Martinez pulled her pants down to her knees and then "[h]e started to do the bad touch." She said Martinez touched her "bottom," which she clarified was the part she uses to urinate. The prosecutor asked, "[W]as that on the outside of your part that you go pee with?," and A.G. agreed. When asked how it felt, A.G. described a burning sensation. She testified he used his entire right hand to touch her. She said she did not know why he stopped, but at some point he pulled her pants back up and returned to the computer. Later her mother came upstairs, and A.G. went into a bathroom with her and told her mother what happened. During the ensuing criminal investigation, A.G. was given a sexual abuse exam, but the examining physician did not offer an opinion as to whether A.G. was sexually abused because the results were normal.

Four days after the incident, A.G. was interviewed by Sunflower House personnel. Sunflower House is a children's advocacy center in the Kansas City metropolitan area. The interview was videotaped, and the recording was played at trial. On the video, A.G. said Martinez "touched me in my no-no." She was given a two-sided drawing of a naked little girl to demonstrate what she referred to as her "no-no." A.G. circled the front side, the vaginal area. A.G. stated she and Martinez were sitting down in the same bed. She then said Martinez pulled her pants down a little bit, and she indicated with her index finger to above the knee. She said he left her underwear on, and she later stated he was "touching skin." A.G. indicated Martinez used his index finger and was touching the inside of her "no-no" for "a little bit." When asked how far it went in, A.G. said, "It went way down."

At one point during the video, A.G. spontaneously stated, "My mommy called me. I told him to get off of me." The interviewer said, "And then, you said [Martinez] put [sic] his hand out of your pants?" A.G. responded, "When my mommy was calling me . . . and my brother and sister . . . to go eat dinner." At the video's conclusion, the interviewer showed A.G. a box and a pen and then

asked A.G. to demonstrate what it meant for the pen to be inside the box. A.G. opened the lid and placed the pen inside the box.

Martinez was charged with rape of child under 14 years of age in violation of K.S.A. 21-3502. The charging document did not allege Martinez was 18 years of age or older. At trial, Martinez moved for a directed verdict at the close of the State's evidence, arguing there was insufficient evidence to convict. The district court denied the motion.

In his defense, Martinez testified he never touched A.G. He said he was using the computer in the bedroom to copy a CD he received for his birthday. He testified he was not paying attention to the children, but he remembered they were running up and down the stairs. He said at trial he could not remember whether A.G. was in the room that night, but earlier he had told a detective investigating the case that A.G. was never in the room with him.

Prior to deliberations, the district court instructed the jury on the charges of rape and attempted rape. Martinez was acquitted of rape but convicted of attempted rape. He was sentenced under the statutorily set term in Jessica's Law to life in prison with a mandatory minimum of 25 years.

Martinez filed a motion for new trial or acquittal notwithstanding the verdict. He challenged his conviction on the following grounds: (1) The district court erred by admitting the Sunflower House video because the State did not provide him with a written transcript of the recording as required by law; (2) the district court improperly excluded evidence that A.G. made a prior allegation of sexual abuse; and (3) there was insufficient evidence because there was no physical evidence corroborating A.G.'s testimony. He also raised one additional jury instruction claim not relevant to this appeal.

The district court denied the motion. The court ruled the videotape was admissible even though a transcript was not provided to the defense. The court found the State substantially complied with K.S.A. 22-3433 by providing the defense with a copy of the video recording. As to the remaining points, the court ruled Martinez failed to demonstrate the prior allegation evidence was relevant and determined there was sufficient evidence for the jury to

find Martinez guilty of attempted rape, even though the case was dependent only on the credibility of witness testimony. Martinez timely appealed.

Martinez makes the following arguments to this court: (1) The videotape was inadmissible under K.S.A. 22-3433 because the State failed to provide a written transcript; (2) there was insufficient evidence to convict on the attempted rape charge; (3) evidence that A.G. made a prior allegation of sexual abuse was improperly excluded; (4) the State committed prosecutorial misconduct during closing argument by misstating the law, attempting to inflame the jury, and improperly bolstering A.G.'s credibility; (5) cumulative error; (6) the failure to instruct the jury on an essential element as to defendant's age under the sentencing provisions to Jessica's Law; and (7) Martinez' sentence is disproportionate and violates the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

## THE VIDEOTAPE'S ADMISSIBILITY

Martinez first argues the district court erred in admitting the Sunflower House video because the State failed to provide him with a written transcript of the recording as required by K.S.A. 22-3433(a)(8) (governing prior recorded oral statements made by child victims). We agree. It was error to admit the videotape into evidence.

K.S.A. 22-3433(a) makes video recordings taken from oral statements given by children, who are crime victims under 13 years old, made before any criminal proceedings began, admissible in evidence if certain conditions are present. This statute operates as an explicit exception to the hearsay rule. Hearsay is a statement "made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2009 Supp. 60-460. The relevant portion of K.S.A. 22-3433 states:

"(a) In any criminal proceeding in which a child less than 13 years of age is alleged to be a victim of the crime, a recording of an oral statement of the child, made before the proceeding began is admissible in evidence if:

. . . .

"(8) each party to the proceeding is afforded an opportunity to view the recording before it is offered into evidence, *and* a copy of a written transcript is provided to the parties." (Emphasis added.)

The State does not dispute it failed to provide Martinez with a written transcript containing A.G.'s oral statements from the videotape. Indeed, the State candidly admitted at oral argument that it had ample opportunity to comply with the statute, but it did not simply to avoid the cost attendant to preparing the written transcript. The State argues this omission was not fatal because it substantially complied with the law by providing Martinez with a copy of the videotape recording. Martinez does not dispute he received his videotape copy at least 2 months before trial. On appeal, Martinez does not argue the State failed to meet any other statutory conditions.

Based on these concessions, we must decide whether the district court correctly held substantial compliance with the statutory mandate to produce a written transcript was sufficient when the State only provided a copy of the recording. This requires us to interpret K.S.A. 22-3433 to determine whether substantial compliance with its provisions is possible when a written transcript is not supplied to a party. Statutory interpretation is a question of law subject to unlimited review. *State v. Schow*, 287 Kan. 529, 535-36, 197 P.3d 825 (2008).

The rules of statutory interpretation are well known, beginning with the fundamental rule that we give effect to the legislature's intent as it is expressed in the statute. Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should be, speculating about legislative intent, or consulting legislative history. *State v. Valladarez*, 288 Kan. 671, 675-76, 206 P.3d 879 (2009). The State does not cite any case law supporting the proposition that substantial compliance with K.S.A. 22-3433 is sufficient.

Looking only at the legislation's plain language, the State was instructed to provide a written transcript if it wanted to use a recording of the child victim's prior oral statement. The statute does not contain an explicit substantial compliance provision. But on occasion, this court has determined substantial compliance may be

sufficient even if such a provision is not included in a statute. See *Cure v. Board of Hodgeman County Comm'rs*, 263 Kan. 779, 782-83, 793, 799-800, 952 P.2d 920 (1998) (substantial compliance with statutes governing the regulation of elections is sufficient when the election has been held and the voters have spoken); *City of Leawood v. City of Overland Park*, 245 Kan. 283, 286, 777 P.2d 830 (1989) (substantial compliance with statutes governing annexation of property for a city's boundaries is sufficient). This case law suggests taking a practical approach focused on a statute's purposes and whether the challenged act or omission impedes the rights provided for in the statute.

But it is more common for the legislature to specify that substantial compliance may suffice by including a provision to that effect in the statute. See K.S.A. 2009 Supp. 12-105b(d) (substantial compliance with notice provisions constitute valid filing); K.S.A. 17-7673(b) (substantial compliance with requirements sufficient to form limited liability company); K.S.A. 19-4710 (complaint is deemed sufficient if it substantially complies with form); K.S.A. 19-4712 (notice to appear is deemed sufficient if it substantially complies with form); K.S.A. 2009 Supp. 26-506(b) (notice of hearing is deemed sufficient if it substantially complies with form); K.S.A. 2009 Supp. 38-2237(a) (service of process completed when substantially complied with the provision); K.S.A. 39-7,140(f) (valid service effected if substantial compliance with requirements); K.S.A. 40-2115 (hearings with insurance commissioner must substantially comply with K.S.A. 40-281); K.S.A. 58a-602(c)(1) (settlor may revoke trust through substantial compliance with trust terms); K.S.A. 2009 Supp. 59-2129(d) (consent for adoption deemed sufficient if substantially complies with form); K.S.A. 60-204 (substantial compliance with methods of service of process shall effect valid service); K.S.A. 60-302 (summons sufficient if it substantially complies with form). In those instances, our courts honor that statutory flexibility.

In response to this appeal, the State asks us to write into the law an exception contradicting the specific and unambiguous statutory language that requires each party to have an opportunity to both view the recording and be provided with a written transcript before

the recording's admission into evidence. We cannot do so. The legislature's plain language specifies a prior recorded oral statement of a child victim under 13 years of age is not admissible unless the requirements set out in K.S.A. 22-3433(a)(1)-(9) are satisfied. The State performed only one step in what is plainly a two-step process specified by our legislature. Appellate courts must apply a statute's language when it is clear and unambiguous. *Valladarez*, 288 Kan. at 675. In this instance, the statute is plain and unambiguous. Accordingly, we must reject the State's argument that it could ignore the statutorily mandated written transcript requirement.

But even if the statute provided for substantial compliance, giving access to only the recording—without providing a written transcript—would not satisfy the mandate for a written transcript. Substantial compliance requires fulfilling the essential matters necessary to assure that every reasonable statutory objective is satisfied. *In re Adoption of X.J.A.*, 284 Kan. 853, 863-64, 166 P.3d 396 (2007). A recording alone is not sufficient because a child's recorded statement may be difficult to comprehend or subject to interpretation where inaudible. For a defendant, the written requirement makes clear what the State plans on telling the jury about the child's recorded statement. Simply producing a copy of the recording, as was done here, did not give the defense the knowledge that reasonably would be expected from such a statutory mandate. For these reasons, we disagree with a recent Court of Appeals decision released after Martinez' case was briefed and argued that found the State's failure to produce a written transcript of a child victim's videotaped interview as required by K.S.A. 22-3433 to be merely a technical error. *State v. Waddell*, No. 100,517, unpublished Court of Appeals opinion filed November 13, 2009, slip op. at 3-4, *pet. for rev.* filed December 14, 2009 (pending). The district court erred by admitting the recording into evidence when the State failed to fulfill the statutory requirement.

With this decision made, we must next consider whether the video recording was admissible through some other statutory means. The State, as an alternative argument, contends the Sunflower House video was admissible as a prior consistent statement of a rape victim under *State v. Washington*, 226 Kan. 768, 602 P.2d

1377 (1979). In *Washington,* this court held that evidence the victim made a prior consistent statement alleging rape or assault with intent to commit rape was admissible to corroborate the victim's testimony. 226 Kan. at 770; see 65 Am. Jur. 2d, Rape § 61, pp. 600-01.

But the problem with the State's argument is that statements permitted under the *Washington* hearsay exception are only admissible to corroborate the victim's testimony, not as independent evidence of the offense. See 226 Kan. at 770. In this case, the primary purpose for admitting the video was to prove Martinez committed rape because the video contained the only statement where A.G. said there was penetration. In addition, we note the district court did not issue a limiting instruction that the video was only admissible to corroborate A.G.'s trial testimony as would be required under the *Washington* hearsay exception. This does not provide an alternative ground for admission in this case. And it would not apply in other instances involving recorded child victim statements because the *Washington* common-law exception contradicts the statutory language in K.S.A. 22-3433(a).

In addition to the State's alternative argument, we have also considered *sua sponte* whether the Sunflower House video was admissible as a previous statement by a witness present at trial under K.S.A. 2009 Supp. 60-460(a). This statutory provision allows admission of a previous statement made by a person who is available for cross-examination. Neither party addressed this particular exception, but we do so here to be comprehensive and because under our facts A.G. testified at trial and was subject to cross-examination.

Under our statutory interpretation rules, the more specific statute must control over a more general statute. *In re K.M.H.,* 285 Kan. 53, 82, 169 P.3d 1025 (2007), *cert. denied* 172 L. Ed. 2d 239 (2008). K.S.A. 22-3433, which pertains to a previously recorded oral statement of a child victim under 13 years of age, is more specific than the general hearsay exception available under K.S.A. 2009 Supp. 60-460(a). Therefore, the more specific provisions in K.S.A. 22-3433 requiring both production of the recording and a written transcript controls the admissibility of such evidence in

these circumstances. This statutory exception does not provide an alternative basis for the videotape's admission into evidence.

To summarize, the district court erred by admitting the Sunflower House video because strict compliance with K.S.A. 22-3433 is required. In addition, the video was not admissible on other grounds.

Having made these determinations, we must next consider whether the videotape's admission constitutes reversible error. The erroneous admission of evidence is reversible error only if it is determined that a refusal to remand would be "inconsistent with substantial justice" under K.S.A. 60-261. See *State v. Boggs*, 287 Kan. 298, 318-19, 197 P.3d 441 (2008).

At the outset, we consider that the jury acquitted Martinez on the rape charge. This indicates the testimony regarding penetration contained on the videotape carried less weight with the jury than the victim's live testimony at trial. Reaching this conclusion is reasonable because the videotape contained the only evidence sufficient to have justified a conviction of rape. Therefore, the jury's acquittal on the rape charge justifies our finding the videotape's admission was harmless error.

But this conclusion is not the final inquiry into whether refusing to remand this case would be inconsistent with substantial justice. To make a full determination, we must decide next whether there was sufficient evidence to support the conviction of attempted rape based on what evidence was presented at trial without the videotape.

## THE ATTEMPTED RAPE CONVICTION

To determine whether there was sufficient evidence to support the attempted rape conviction, we must first consider the elements of the offense. Rape includes "sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3502(a)(2). Sexual intercourse is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1). Attempt is defined as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but

fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-3301; See PIK Crim. 3d 55.01.

This court defines the elements of attempted rape under K.S.A. 21-3502(a)(2) as requiring proof a defendant:

"(1) [P]erformed an overt act toward penetrating the sexual organ of a female child under the age of 14; (2) performed that act with the intent to penetrate the sexual organ of a female child under the age of 14; and (3) failed to penetrate the sexual organ of a female child under the age of 14." *State v. Peterman*, 280 Kan. 56, 60, 118 P.3d 1267 (2005).

Martinez argues there was insufficient evidence regarding two elements—intent to commit rape and failure to complete the commission of rape. He contends the evidence might have been sufficient to sustain a conviction for aggravated indecent liberties with a child, which was not charged in this case, but he claims it was not enough to demonstrate attempted rape. The State argues the evidence was sufficient, and the district court agreed. Due to the claimed insufficiency in the evidence, Martinez makes a related argument that it also was error for the district court to instruct on attempted rape, although he concedes he did not object to the giving of this instruction at trial. We will consider that argument after analyzing the evidence.

Our standard of review when sufficiency of the evidence is challenged following conviction in a criminal case is whether, after reviewing all the evidence, viewed in a light most favorable to the prosecution, we are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009).

With this standard in mind, we will consider separately whether there was sufficient evidence for the jury to convict on attempted rape, without consideration of the videotape, as to intent and failure to complete the rape. In doing so, we note Martinez does not contend there was insufficient evidence of an overt act, which also is an element of the offense, as discussed above. In Kansas, an overt act requires an act beyond mere preparation, which can be considered a first or subsequent step in a direct movement towards completing the crime. *State v. Stevens*, 285 Kan. 307, 318-19, 172

P.3d 570 (2007). A.G.'s testimony that Martinez pulled her pants down and touched her genital area established this element, and Martinez does not contend otherwise.

*Intent to Commit Rape*

First, we consider whether the evidence remaining after excluding the videotape established that Martinez intended to penetrate the sexual organ of a female child under the age of 14. The intent required for attempt crimes must be specific to the underlying crime. *Peterman*, 280 Kan. at 60. Kansas courts recognize intent is very difficult to establish. See *State v. Lassley*, 218 Kan. 758, 762, 545 P. 2d 383 (1976) (It is very "difficult, if not impossible, to show [intent] by definite and substantive proof."). This is particularly true in a case such as this because the conviction rests entirely upon a child witness' testimony.

But intent may be inferred from " 'acts, circumstances, and inferences reasonably deducible therefrom.' " *State v. Salcido-Corral*, 262 Kan. 392, 398, 940 P.2d 11 (1997) (citing *State v. William*, 248 Kan. 389, 402, 807 P.2d 1292, *cert. denied* 502 U.S. 837 [1991]). Evidence of attempted penetration is not required to establish attempted rape. *State v. Gonzales*, 245 Kan. 691, 698, 783 P.2d 1239 (1989); *State v. Hanks*, 236 Kan. 524, 529, 694 P.2d 407 (1985).

Other cases have reviewed whether there was sufficient evidence of intent. In *Gonzales*, 245 Kan. at 696-98, this court upheld a defendant's conviction of attempted rape despite challenges to the sufficiency of the evidence of intent to commit rape. In that case, the defendant was convicted of felony murder and attempted rape. He argued there was insufficient evidence to prove the murder was committed during the commission of an attempted rape when he admitted killing the victim, an adult female, after she refused to indulge in anal sex. Gonzales asserted the State erroneously charged him with attempted rape instead of attempted aggravated criminal sodomy.

The *Gonzales* court held the evidence of attempt to sodomize did not preclude a finding the defendant also intended rape. 245 Kan. at 697. Evidence supporting the attempted rape conviction

may be itemized from the court's decision as follows: (1) the defendant made statements that evening that he wanted to "get lucky" or "get it" from the victim; (2) semen was found on the victim's front left thigh; (3) her bra had been cut and blood was smeared across her breasts; (4) her underwear was ripped or cut off; (5) the back of her legs and buttocks were covered with dirt; (6) the majority of the wounds were from a frontal attack; and (7) the indentations on the ground suggested someone had spread the victim's legs and knelt down between them. 245 Kan. at 697-98.

Similarly in *State v. Zimmerman*, 251 Kan. 54, 833 P.2d 925 (1992), the defendant was convicted of attempted rape, and he argued there was insufficient evidence to find he intended to commit rape because the facts showed his intended offense was voyeurism. The evidence showed an adult female had fallen asleep or passed out in a chair visible from outside an apartment. Two friends also in the apartment heard a loud thump, and one went to check on the victim. The defendant was encountered leaving the apartment's kitchen. The victim was found in the laundry room adjacent to the kitchen with her pants pulled down. She also suffered a head wound. During the investigation, the defendant told police he "was considering rape, but mainly [he] just looked." 251 Kan. at 61. This court held there was sufficient evidence to find the defendant intended to commit rape. 251 Kan. at 61.

In contrast, this court found insufficient evidence of intent to commit rape in only one case. In *State v. Carr*, 230 Kan. 322, Syl. ¶ 4, 634 P.2d 1104 (1981), *overruled on other grounds State v. Cantrell*, 234 Kan. 426, 673 P.2d 1147 (1983), *cert. denied* 469 U.S. 817 (1984), the defendant spent the evening drinking heavily with friends to celebrate his impending marriage. When he returned to his apartment complex, the defendant entered the victim's apartment. The victim and her boyfriend were asleep in her bedroom. Both awakened to discover the defendant's hand on the victim's breast. The defendant leaned forward, looked closely at them, and then fled the apartment. This court held the evidence was insufficient for a rational factfinder to conclude the defendant intended rape. We agreed one could infer a general criminal intent from these facts but not the specific intent to commit rape, despite

the defendant's presence in the bedroom, because the defendant was fully clothed in a room with enough light to show two figures in the bed. 230 Kan. at 327.

Based on our standard of review and the reasonable inferences to be drawn from A.G.'s testimony when viewed in the light most favorable to the prosecution, we hold the evidence was sufficient for a rational factfinder to determine Martinez intended to penetrate the victim's vagina. Considering only the evidence from A.G.'s testimony at trial, it was established that (1) Martinez pulled her pants down to her knees; (2) he started to do "the bad touch"; (3) he was touching A.G.'s "bottom," which she clarified was the part of her body where she urinates; (4) he was touching the outside of her body where she urinates; and (5) the part of her body where she urinates was made to burn by his touching her. Our cases hold evidence of attempted penetration is not required. A.G.'s testimony was sufficient for the jury to reasonably infer Martinez intended to commit rape. We agree with Martinez that the facts also could have supported a conviction of aggravated indecent liberties with a child, but this does not preclude the jury from determining he intended to commit rape, even if there was no direct evidence of intent.

With the intent element established, we next direct our attention to the final element necessary to convict for attempted rape—whether there was evidence Martinez failed to penetrate the sexual organ of a female child under the age of 14 after forming the intent to do so.

*Failure to Penetrate*

Martinez argues there was insufficient evidence that he was prevented or intercepted from completing the crime. He points out that after A.G. testified he stopped touching her, she was asked if she knew why he stopped. A.G. replied she did not. Martinez denied ever touching her. Martinez claims this evidence left the jury with only two choices: to believe A.G. and convict Martinez of rape or to acquit him. Martinez claims it was error to allow the jury to consider attempted rape without evidence he was interrupted or prevented from completing the rape.

But Martinez' argument misstates the law as to what was required to demonstrate a failure to penetrate, and he cites no legal authority supporting his argument that there must be evidence he was prevented or intercepted from completing the crime. K.S.A. 21-3301 defines attempt as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof *or* is prevented or intercepted in executing such crime." (Emphasis added.) This language offers alternatives to the prosecution in establishing the attempt. The State could produce evidence that a defendant was "prevented or intercepted" in executing the crime or, in the alternative, demonstrate there was a failure to perpetrate the crime. In *Peterman*, we described proof of this element in the context of attempted rape as simply showing the defendant "failed to penetrate the sexual organ of a female child under the age of 14." 280 Kan. at 60.

A.G.'s testimony that Martinez stopped touching her genitalia was sufficient given the jury's determination that he intended to commit rape based on the evidence supporting that finding as discussed above. It was not necessary for the State to prove someone or something prevented Martinez from penetrating A.G.'s sexual organ in order to sustain an attempted rape conviction. A.G.'s testimony at trial was sufficient to justify the jury's verdict.

*The Jury Instruction for Attempted Rape*

Having determined there was sufficient evidence to establish the elements of intent to commit rape and the failure to complete the rape, we necessarily dispose of defendant's related argument that the district court erred by giving the lesser included offense instruction on attempted rape. Martinez concedes he did not object at trial to the attempted rape instruction, so he must show on appeal the instruction was clearly erroneous. See K.S.A. 22-3414(3); *State v. Overstreet*, 288 Kan. 1, 9-10, 200 P.3d 417 (2009). Because we have determined the evidence sufficient as to the elements of attempted rape, it was not clear error to give the instruction.

THE CLAIM A.G. MADE A PRIOR ALLEGATION OF ABUSE

Before trial, the State successfully sought an order preventing Martinez from admitting evidence that A.G. previously accused

another family member of sexual abuse. Martinez' attorney admitted he did not know the "exact circumstances" surrounding this claimed prior allegation, but he proffered that Luttrell (A.G.'s aunt and Martinez' girlfriend) would testify A.G. previously accused a family member of "doing the same thing to her."

The State proffered that Luttrell would testify she had no personal knowledge of the incident and did not know whether the alleged touching was sexual in nature. Therefore, the defense had no basis to establish relevancy. The State also proffered that A.G. and A.G.'s mother would deny the allegation occurred. In addition, the State asserted, A.G.'s mother would testify that an 8-year-old cousin stuck his finger in A.G.'s mouth while they were wrestling, but neither A.G. nor her mother accused him of sexual abuse.

Martinez argued this alleged prior accusation was relevant to show A.G. made a false allegation against Martinez to avoid getting in trouble. The defense's premise was that A.G. was actually in the room with Martinez listening to his new CD, which she was not permitted to do, and A.G. had learned from the prior accusation she could accuse someone of sexual abuse in order to get herself out of trouble. The district court ruled the testimony was irrelevant because Martinez failed to show that "it happened before and she got out of trouble and so therefore she's doing it this time to get out of trouble."

On appeal, Martinez argues the district court erred by excluding Luttrell's testimony about this alleged prior accusation. He argues it was relevant and that there was sufficient evidence proffered to admit the testimony under the same theory advanced at trial—namely that the prior accusation taught A.G. that making a false abuse claim would get her out of trouble. The State counters by arguing first that the evidence was irrelevant because the defense failed to provide any evidence supporting its theory. Then, the State notes A.G. actually testified about the prior allegation by denying it happened, which opened up the subject for the defense, but that the defense did not pursue the subject, so the argument is now waived. We find Martinez' argument fails because the proffered evidence did not establish a prior accusation of abuse, the

alleged prior accusation was false, or that any alleged prior accusation was relevant.

*Standard of Review*

We review the exclusion of evidence first by determining whether the evidence is relevant. K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." This definition encompasses two components: (1) whether the evidence is probative and (2) whether it is material. *State v. Dixon*, 289 Kan. 46, 69, 209 P.3d 675 (2009); *State v. Henson*, 287 Kan. 574, 578, 197 P.3d 456 (2008). Probative evidence is evidence that " 'furnishes, establishes or contributes toward proof.' " *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998). Whether evidence was probative is reviewed under an abuse of discretion standard. *Dixon*, 289 Kan. at 69. Material evidence goes to a fact at issue that is significant under the substantive law of the case. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008). The determination of whether evidence is material is reviewed under a de novo standard. *Dixon*, 289 Kan. at 69.

Once relevance is established, the evidentiary rules governing admission or exclusion of evidence are applied as a matter of law or in the exercise of judicial discretion, depending on the applicable rule. But, if the adequacy of the legal basis is questioned, appellate courts review this question de novo. *Dixon*, 289 Kan. at 70; *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

*Analysis*

Martinez sought to admit Luttrell's statement to attack A.G.'s credibility. To do so, he argues a complicated theory to assert relevance, requiring us to supply additional facts. The first stage to his theory is that A.G. fabricated the sexual abuse allegation to avoid getting into trouble for listening to rap music. This is predicated on: (1) A.G.'s testimony that she was listening to the "bad songs" Martinez was playing on the computer that night; and (2) her mother's testimony that when she walked into the bedroom, A.G. "[j]umped up real fast and she just gave this look that just didn't make me feel good," so she took A.G. into the bathroom and asked A.G. if she did something wrong.

The second stage is based on an assumption there was previously an uproar in A.G.'s family regarding the prior alleged incident. This, the defense offers, taught A.G. she could falsely accuse someone, like Martinez, of sexually abusing her to avoid getting in trouble for listening to rap music. Martinez argued at trial it was unnecessary to have any evidence the prior allegation caused an uproar, was witnessed by A.G., or that the prior allegation got her out of trouble because the jury could call on common experience that "[c]hildren lie to get out of trouble." This was a leap in logic the district court was not required to make.

This argument fails because the testimony the defense proffered was insufficient to establish a reasonable inference that a prior accusation of sexual abuse occurred. Martinez' entire argument hinges on Luttrell's vague statement that A.G. accused someone else of "doing the same thing." But this ignores the balance of Luttrell's proffered testimony that she did not know whether A.G. had ever accused someone else of sexual abuse. Her testimony provides no basis to reasonably believe A.G. made an allegation of, or was subjected to, any prior sexual abuse. But even if the defense established this as a prior allegation, Luttrell's testimony was immaterial because there is no logical connection between the prior allegation and the facts at issue in this case, i.e., whether A.G. fabricated the current allegation against Martinez. The defense had no evidence a prior allegation had caused an uproar and allowed A.G. to avoid punishment. Luttrell's testimony on this issue did not satisfy the probative or material elements required to establish relevance.

This court recently reached the same result on a similar issue in *State v. Bello*, 289 Kan. 191, 193-95, 211 P.3d 139 (2009). In that case, the defendant sought to introduce evidence that the victim was sexually abused or witnessed another girl's abuse and the victim had transferred that experience into the allegations against the defendant. We held the evidence was irrelevant because the defendant's proffered evidence failed to support a reasonable inference the victim suffered any prior abuse or trauma. 289 Kan. at 195. The same rationale applies here, and the evidence was properly excluded.

Finally, we address whether Martinez may have failed to capitalize on an opening in the evidence that seemingly developed on this point during trial and, therefore, waived this argument. We note that in cross-examining A.G., the defense counsel asked her about a statement A.G. made earlier accusing Luttrell of lying. A.G. responded that "[Luttrell] thought [A.G.'s cousin] did a bad touch to me, but he didn't." On redirect, A.G. testified Martinez was the only person who sexually abused her and Luttrell's statement that someone else abused A.G. was a lie.

Based on these exchanges, the State contends the defense could have recalled Luttrell and pursued whether the State waived the order in limine. But we believe this argument stretches our legal realities too far. The evidence admitted fell short of what Martinez sought to introduce and would not have established that A.G. accused someone else of sexual abuse. This exchange is not enough for us to find Martinez waived his claim that the district court improperly excluded the evidence. We base our ruling on the earlier reasoning stated above.

## The Prosecutorial Misconduct Claim

Martinez next raises three prosecutorial misconduct claims. Two relate to statements made during closing arguments. The other claims the prosecutor impermissibly bolstered A.G.'s credibility at the end of her trial testimony by asking A.G. whether she had testified truthfully. Martinez acknowledges he failed to make timely objections to any of these alleged errors.

This court recently clarified that an objection is not required to preserve a claim of prosecutorial misconduct for comments made during closing arguments. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009); *State v. Decker*, 288 Kan. 306, 314, 202 P.3d 669 (2009). But a timely objection is required to preserve claims about a prosecutor's questions and the witness' answers. *King*, 288 Kan. at 349. Therefore, only the errors claimed during closing arguments are preserved for appeal. For the reasons stated below, we reject these remaining prosecutorial misconduct claims.

*Standard of Review*

This court employs a two-step analysis for allegations of prosecutorial misconduct regardless of whether a timely objection is made. First, the court determines whether the prosecutor's statements exceeded the wide latitude of language and manner afforded a prosecutor in making closing arguments. Inherent in this latitude is the prosecutor's freedom to argue reasonable inferences from the evidence. Second, the court must determine whether the prosecutor's comments constitute plain error. This occurs when the statements are so gross and flagrant they prejudiced the jury against the defendant and denied the defendant a fair trial. *Decker*, 288 Kan. at 314.

The second step requires the examination of three factors: (1) whether the misconduct was so gross and flagrant it denied the accused a fair trial; (2) whether the remarks showed ill will by the prosecutor; and (3) whether the evidence against the defendant was of such a direct and overwhelming nature that the prosecutor's statements would not have much weight in the jurors' minds. 288 Kan. at 315.

But none of these factors is controlling. Further, the third factor can never override the first two factors until the harmlessness tests of both K.S.A. 60-261 (prosecutor's statements were inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967) (error had little, if any, likelihood of changing the outcome of trial), have been met. *Decker*, 288 Kan. at 315; *State v. Tosh*, 278 Kan. 83, 97-98, 91 P.3d 1204 (2004).

*Analysis*

Martinez' first objection is to the prosecutor's statement during closing argument that "[i]f you think that he put his hand on her, but he didn't stick it in, that's attempted rape." When placed in context, we do not believe this statement was prosecutorial misconduct. The statement was made during a thorough explanation of the elements of attempted rape. The prosecutor stated:

"The only difference between [rape] and the lesser included offense of attempted rape is this aspect of penetration. If you read carefully Instruction No.

7 on attempted rape, it says that to establish this charge, the following claims must be proved: That the defendant performed an overt act towards the commission of rape, to wit: He placed his hand on the genital area of [A.G.]—not in—that he did it with intent to commit rape, and that he failed to complete the commission of the crime, which translates to that he did not penetrate her. That's the only difference.

*"If you think that he put his hand on her, but he didn't stick it in, that's attempted rape.* If you think that he actually put his finger inside where she says that it burned and it hurt— . . . [t]his was a rape.

"But even if you think there wasn't penetration, this is an attempted rape." (Emphasis added.)

A review of the entire statement shows it is an accurate recitation of the elements required to prove attempted rape. Martinez' argument fails on the first step of the prosecutorial misconduct analysis. This did not exceed the wide latitude afforded to the prosecution to argue inferences from the evidence presented.

Martinez' second objection is a closer call. As the State finished its rebuttal closing argument, the prosecutor made the following statement:

"I'm struck by one thing [A.G.] said during this trial, and that was when [Martinez' attorney] was asking her on cross-examination why [Martinez] was mad that night. Why was he upset when he came downstairs and was confronted with all of this? And she said . . . because I told on him. I told what he did to me. Isn't that what we want our kids to do when something like this happens? We want them to tell. She did that. *Let her know she did the right thing.*" (Emphasis added.)

Martinez legitimately points out the prosecutor's statement attempts to divert the jurors' attention from the evidence and the law to a desire to let a little girl know that reporting such crimes was appropriate, citing *State v. Ruff*, 252 Kan. 625, 635-36, 847 P.2d 1258 (1983), as analogous. He argues this prejudiced the jurors and exceeded the limits of fair discussion of the evidence. The State claims this statement was "fair comment" because it accurately references A.G.'s testimony that she "telled [*sic*] on him." The State also argues this statement was presented merely in addition to its plea to convict Martinez on the evidence. Finally, the State argues the comment was a single statement used to wrap up the evidence and that the entire argument, as a whole, urged the jury to convict on the evidence.

There is no question the prosecutor's closing remark injects irrelevant decision-making into the jury process. By making such an avoidable and unnecessary comment, the prosecution risks unraveling its case on appeal. Jurors are to be directed to the evidence in the case, not to concerns outside of their sworn duty. Therefore, the prosecutor's rallying cry to "[l]et her know she did the right thing" requires close scrutiny to determine its impact upon this conviction.

It should be noted that, although the defense did not challenge it, the State made additional statements elaborating on this same theme. These additional statements occurred earlier in the State's rebuttal in response to an argument made by Martinez' counsel. We review the entire argument to determine the extent of the violation and the weight it may have had in the jurors' minds. During closing arguments, Martinez' counsel said:

"And if it is a false accusation, think about 10 years from now when she has the maturity to understand what her false accusation has done, how it devastated her family and how that's going to affect her. Following the Court's instruction in this case and applying it appropriately to the beyond a reasonable doubt standard is not only going to protect my client as it's designed to do, it's going to protect [A.G.] in this case."

Instead of objecting to the defense counsel's argument, the prosecutor urged the jury to protect A.G. by "holding her perpetrator accountable and showing [A.G.] that when somebody like [Martinez] puts his hand down her panties and puts his finger in her vagina that there is a consequence to that." This statement is related to the statement Martinez challenges about urging the jury to show A.G. "she did the right thing."

Turning to the misconduct analysis, we recognize the prosecution has a duty to argue the cases before it with earnestness and vigor through all legitimate means. *King*, 288 Kan. at 351; *Ruff*, 252 Kan. at 634. But the prosecutor also is an officer of the court, occupying a quasi-judicial position with its own responsibilities and traditions. *Ruff*, 252 Kan. at 634. The prosecutor crosses the line of appropriate argument when that argument is intended to inflame the jury's passions or prejudices or when the argument di-

verts the jury's attention from its duty to decide the case on the evidence and controlling law. *Tosh*, 278 Kan. at 90. The State's comment urging the jury to tell A.G. "she did the right thing" by reporting the incident crosses this line because it appealed to the jurors' parental instincts and diverted their attention from the evidence and the law.

In *Ruff*, the case cited by Martinez, this court determined the prosecutor's closing comments urging the jury to "not allow this conduct to be tolerated" were improper. 252 Kan. at 631, 636. That decision highlighted the prosecutor's duty to ensure only competent evidence is submitted to the jury and avoid arguments that could prejudice the jurors' minds, preventing them from deciding the case on the evidence. 252 Kan. at 636. This same duty, of course, is at issue here.

But the comment in Martinez' case is more analogous to one of the comments found to be improper in *Tosh* because both comments appealed to the jurors' parental instincts. In *Tosh*, this court held that four of a prosecutor's closing remarks violated the first step in the prosecutorial misconduct analysis. 278 Kan. at 93. One remark came at the end of the closing argument when the prosecutor stated, " 'When [K.T.] was little, and even today, her father failed to protect her. He raped her. You can protect her. You can find him guilty.' " 278 Kan. at 92.

This court held comments urging the jury to protect the victim were designed solely to inflame the jurors' passions. 278 Kan. at 92. The prosecutor's comment in this case urging the jury to show A.G. she "did the right thing" served the same purpose. It was irrelevant to the law and the facts. Therefore, we hold the statement exceeded the wide latitude of language and manner afforded the prosecutor. The issue now becomes whether the statement was so gross and flagrant that it prejudiced the jury such that we must reverse the conviction.

As established above, none of the factors comprising the second step in our analysis are individually controlling. While it is possible for the harmlessness factor to override the others if the tests in K.S.A. 60-261 and *Chapman* are satisfied, this practice is employed with caution because a defendant is entitled to a fair trial regardless

of the quantum of evidence against him or her. *Tosh*, 278 Kan. at 93, 97-98.

In *Tosh*, this court cautioned there are "degrees of seriousness" and that the three factors used to determine whether an error interfered with a defendant's right to a fair trial must allow appellate courts to consider those degrees and their likely effects. 278 Kan. at 93-94. The *Tosh* court also held that the prosecutor's comment cited above may not have been sufficient by itself to require reversal, but the cumulative effect of all four improper comments did require reversal. 278 Kan. at 94.

In Martinez' case, the prosecutor's comment that jurors should send A.G. a message and "[l]et her know she did the right thing" seems less severe than the comments made in *Tosh*, even though both statements appeal to the jurors' parental instincts to protect and affirm the child's beliefs. Unlike *Tosh*, the prosecutor's statement here did not suggest A.G. may be harmed again if the jury did not convict. There also was no evidence of ill will. The comment, although avoidable, was isolated in the prosecutor's rebuttal argument. The prosecutor's initial closing statements were properly restricted to the evidence and the law. Finally, defense counsel's own misstep during closing argument cracked the door open to the prosecutor's rebuttal and led to the improper comment.

Turning to the third factor, whether the evidence against the defendant was of such a direct and overwhelming nature as to render the prosecutor's statement harmless, it is difficult to find the evidence supporting conviction was direct and overwhelming because the case hinged entirely upon the credibility of A.G.'s testimony. But as discussed above, there was sufficient evidence to sustain Martinez' conviction of attempted rape under a reasonable doubt standard. The fact that the evidence cannot be characterized as overwhelming does not require us to find the prosecutor's comment violated Martinez' right to a fair trial. The weight of one factor should not dominate the analysis, and the combination of a lack of ill will and substantial evidence of guilt is sufficient to find Martinez' right to a fair trial was not violated.

## THE CUMULATIVE ERROR CLAIM

Martinez next argues that even if the errors alleged above do not amount to error on their own, their collective combination violated his right to a fair trial. It is well recognized the cumulative effect of trial errors may be so great that the errors require reversal. The test is "whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial." *State v. Hoffman*, 288 Kan. 100, 109-10, 200 P.3d 1254 (2009).

We have found two trial errors committed in this case: (1) the Sunflower House video's admission; and (2) one statement made during the prosecutor's closing argument. We held each to be harmless. They were also unrelated. It cannot be held that the combination of these errors was so prejudicial as to deny Martinez a fair trial.

## DEFENDANT'S AGE

Based on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), Martinez next raises two related challenges to his attempted rape conviction and the off-grid sentence imposed. Both arguments are premised on the State's burden to prove he was 18 years or older as an element of the crime charged under K.S.A. 21-3502 and K.S.A. 21-4643. First, he claims the State's failure to allege his age in the complaint deprived the district court of jurisdiction to sentence him to life in prison. Second, he argues the district court's failure to instruct the jury that it must find he was 18 years or older violated his rights under the Sixth Amendment to the United States Constitution. Both arguments are made for the first time on appeal.

Martinez' first claim, challenging whether the complaint or information was sufficient to confer subject matter jurisdiction, is a question of law subject to unlimited review by an appellate court. See *State v. Gonzales*, 289 Kan. 351, 366, 212 P.3d 215 (2009). Appellate arguments implicating concerns relating to statutory and constitutional interpretation also are subject to unlimited review. 289 Kan. at 365.

In *Gonzales*, this court held a defendant challenging the sufficiency of the charging document for the first time on appeal must

show the alleged defect either: "(1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial. [Citations omitted.]" 289 Kan. at 368.

The State concedes the information charging Martinez did not state his date of birth or allege that he was 18 years of age or older at the time of the offense. But the information did advise him he was charged with an off-grid person felony and specifically listed the elements for rape of a child under 14 years of age in violation of K.S.A. 21-3502. Martinez does not contend preparations for his defense were impaired or that his rights to a fair trial were compromised. Nor has he shown his conviction for attempted rape of a child under the age of 14 affected any subsequent prosecution. We find Martinez was adequately informed of the charge against him and the possible penalty if found guilty. We hold this challenge, which is raised for the first time on appeal, fails to make the necessary showing to deny the district court of its jurisdiction to sentence Martinez for the off-grid offense.

The second challenge relates to the district court's failure to instruct the jury to determine whether Martinez was 18 years of age or older at the time of the offense. This issue arises from recent decisions involving Jessica's Law in which we held the failure to allege and instruct on the defendant's age was error under *Apprendi*. See *State v. Morningstar*, 289 Kan. 488, 494-95, 213 P.3d 1045 (2009); *Gonzales*, 289 Kan. at 371; *Bello*, 289 Kan. at 199-200. In those cases, the record contained no evidence on which a jury could have based a finding about the defendant's age, even if the jury was properly instructed. Accordingly, we remanded the cases to the district court for resentencing under the Kansas Sentencing Guidelines Act, rather than under the off-grid sentencing provisions required by Jessica's Law. Martinez seeks the same sentencing relief in this appeal.

But more recently in *State v. Reyna*, 290 Kan. 266, 234 P.3d 761 (2010), we considered whether the failure to instruct the jury on this element of the crime was harmless when the trial record contained evidence of the defendant's age that would have permitted

the jury to make the appropriate finding, if properly instructed to do so. In *Reyna*, we concluded that a harmless error analysis was applicable. 290 Kan. at 682.

The *Reyna* court analyzed the issue in light of this court's decisions in *State v. Daniels*, 278 Kan. 53, 57, 91 P.3d 1147, *cert. denied* 543 U.S. 982, (2004), and *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003), and in light of the United States Supreme Court's decisions in *Apprendi* and *Washington v. Recuenco*, 548 U.S. 212, 222, 165 L. Ed. 2d 466, 126 S. Ct. 2546 (2006) (concluding that "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error"). Our court in *Reyna* explained its holding as follows:

"*Daniels* stands for the proposition that this court will apply the harmless error analysis to the omission of an element from the instructions to the jury when a review of the evidence leads to the conclusion beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error. And *Recuenco* stands for the proposition that characterizing the omission as an *Apprendi*-type error, *i.e.*, judicial factfinding of the omitted element when that element enhances the maximum applicable sentence, does not change that analysis." *Reyna*, 290 Kan. at 681.

There was evidence admitted at trial that Martinez was celebrating his 21st birthday on the date the crime occurred. This was presented during the testimony of the defendant's father, Martinez' girlfriend, and the victim's mother. Further, this testimony was not disputed.

Therefore, there was uncontested evidence before the jury on which it could have based a finding about the defendant's age at the time of the offense, if properly instructed to do so. This evidence distinguishes Martinez' case from *Morningstar, Gonzales,* and *Bello*, in which there was no evidence presented to the jury about the defendant's age. As in *Reyna*, we are convinced the *Apprendi*-type error that occurred in Martinez' case, when the trial court made the age determination rather than having the jury make the actual finding, was harmless.

### Constitutionality of Sentence

Finally, Martinez argues his sentence under K.S.A. 21-4643 was disproportionate under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. But he did not raise this constitutional issue before the trial court, so the first question is whether the issue is properly before us. We find it is not, and the issue is waived. See *Reyna*, 290 Kan. at 688-89; *State v. Oehlert*, 290 Kan. 189, 191-93, 224 P.3d 561 (2010); *State v. Robison*, 290 Kan. 51, 53-54, 222 P.3d 500 (2010); *State v. Mondragon*, 289 Kan. 1158, 1163, 220 P.3d 369 (2009); *State v. Spotts*, 288 Kan. 650, 652-54, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, 159-61, 199 P.3d 1265 (2009); *State v. Ortega-Cadelan*, 287 Kan. 157, 159-61, 194 P.3d 1195 (2008).

As outlined above, Martinez' conviction and sentence are affirmed.

\* \* \*

JOHNSON, J., dissenting: Consistent with my position in *State v. Reyna*, 290 Kan. 666, 690, 234 P.3d 761 (2010), and *State v. Garza*, 290 Kan. 1021, 1036, 236 P.3d 501 (2010), I respectfully dissent on the issue of the missing element, *i.e.*, the defendant's age, relating to Martinez' conviction and sentence for the off-grid offense of attempted rape.

In that regard it occurs to me that a creative prosecutor might charge a defendant with simple battery and mislabel it as an off-grid felony. Then, after the jury has convicted on the elements of the simple battery, the State could seek a sentence for any crime on which evidence might have been fortuitously presented at trial, such as aggravated battery, rape, sodomy, or even premeditated first-degree murder. Apparently, my colleagues would condone such a ploy.