NOT DESIGNATED FOR PUBLICATION

Nos. 121,902
121,911

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FRANK L. JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; JEFFREY R. ELDER, judge. Opinion filed November 18, 2022. Affirmed.

*Christopher T. Etzel*, of Onaga, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

PER CURIAM: Frank L. Johnson was charged with animal cruelty under K.S.A. 2018 Supp. 21-6412(a)(3) in two separate trial court cases regarding horses he either owned or cared for. The two cases were consolidated, and a bench trial was held. The trial court found Johnson guilty of both counts and sentenced the defendant. At sentencing, the trial court ordered Johnson to pay $118,000 in restitution to the Jackson County Sheriff's Office for the care of the horses, which were seized early in the case. On appeal, Johnson argues: (1) The trial court erred in failing to establish a payment plan for the restitution portion of his sentence and (2) the trial court abused its discretion in

1

ordering Johnson to pay restitution despite him showing indigency and unworkability. Based on statutory construction under K.S.A. 2018 Supp. 21-6412(g), we conclude that both of Johnson's arguments fail. As a result, we affirm.

FACTS

In 2018, Johnson was charged with 45 counts of animal cruelty under K.S.A. 2018 Supp. 21-6412(a)(3)—12 counts in one case and 33 counts in another. Procedurally, Johnson was first convicted by a magistrate judge after which he appealed to the trial court.

The trial court reduced the number of these charges on account of Johnson's jeopardy argument, and in April 2019 Johnson was convicted of one count of animal cruelty in each case. At Johnson's sentencing for these convictions in May 2019, the trial court imposed two 12-month sentences to be served concurrently, with 30 days of the sentence to be served in the county jail. After those 30 days, the trial court granted 24 months' probation to Johnson. The trial court ordered Johnson to pay court costs, probation fees, and other fees.

At Johnson's sentencing, the State requested $180,046.67 in expenses incurred because of seizing Johnson's horses and providing care for them while the case was continued. The trial court, the State, and Johnson's defense counsel all referred to these costs as "restitution" at Johnson's sentencing. Johnson asserted that the proper amount of restitution would be either $118,282.41 or $92,600, depending on whether the trial court used the date of Johnson's conviction or the date the animals were seized, respectively.

When the trial court judge asked whether Johnson could pay $92,000 in restitution, Johnson stated, "No." Johnson explained that his monthly income was $1,058 in Social Security, and that his monthly expenses were roughly $850. Johnson also stated

2

that he "lose[s] $80 on the phone bill and $120 on the car for transportation," but he did not clarify whether those expenses were in addition to or were included in the $850 monthly expenses mentioned previously. Johnson also indicated that he was buying the land on which he had kept the horses, which cost $620 per month. He had roughly $59,000 left to pay before he gained ownership of this land.

At the conclusion of the sentencing hearing, the trial court ordered Johnson to pay $118,000 in restitution. Additionally, the trial court stated that, if Johnson paid $25,000 in restitution within two years, his probation would end, and he would not be sent to jail. The trial court noted that Jackson County could initiate a civil suit against Johnson for the rest of the $118,000 if it wished.

The trial court ordered Johnson to "work out a restitution payment schedule with [his] supervising officer." The trial court also explained to Johnson that if he complied with this restitution payment plan, the conditions of his probation would remain intact. On the other hand, if he failed to pay $25,000 after two years, the trial court stated that the State could request for his probation to be extended, and that this request would likely be granted.

We consolidated the cases for appeal. Johnson timely filed a notice of appeal in both cases.

ANALYSIS

*Did the trial court err in failing to establish a payment plan when it ordered Johnson to pay restitution?*

Johnson first asserts that the trial court erred by not establishing a restitution payment plan and by instead delegating this duty to Johnson's probation officer. The State, however, argues that if the amount due is treated as a fine assessed under K.S.A.

3

2018 Supp. 21-6412(g), Johnson's restitution payment plan argument fails. We agree with the State. Johnson was charged with 45 counts of animal cruelty under K.S.A. 2018 Supp. 21-6412(a)(3)—12 counts in one case and 33 counts in another.

Resolving Johnson's argument requires us to interpret K.S.A. 2018 Supp. 21-6412(g). Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

Johnson argues his restitution order at sentencing was illegal because it did not conform to K.S.A. 2018 Supp. 21-6604(b)—the statute that governs restitution. He asserts that the statute required the trial court to establish a payment plan when it ordered restitution at his sentencing. Although the trial court, the State, and Johnson's defense counsel all referred to these costs as "restitution" at Johnson's sentencing, a story told of President Abraham Lincoln during his days as a trial lawyer may be helpful to avoid misidentifying something. Lincoln is said to have cross-examined a witness as follows:

> "'How many legs does a horse have?'
> "'Four,' said the witness.
> "'Right', said Abe.
> "'Now, if you call the tail a leg, how many legs does a horse have?'
> "'Five,' answered the witness.
> "'Nope,' said Abe, 'callin' a tail a leg don't make it a leg.'[Citations omitted.]" *State v. Morales*, 52 Kan. App. 2d 179, 187, 363 P.3d 1133 (2015).

Thus, merely referring to costs as restitution does not make it so.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary

4

meanings. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 309 Kan. at 164. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

The State argues that the costs are not restitution at all. Instead, it argues that the costs are fines assessed under K.S.A. 2018 Supp. 21-6412(g).

K.S.A. 2018 Supp. 21-6412(g) states:

> "(g) Expenses incurred for the care, treatment or boarding of any animal, taken into custody pursuant to subsection (e), pending prosecution of the owner or custodian of such animal for the crime of cruelty to animals, shall be assessed to the owner or custodian as a cost of the case if the owner or custodian is adjudicated guilty of such crime."

It was appropriate to characterize the costs described by the State as expenses under K.S.A. 2018 Supp. 21-6412(g). The State described the costs as being incurred to board, feed, and care for the horses because of Johnson losing possession of them after being charged with animal cruelty.

The opening language of K.S.A. 2018 Supp. 21-6412(g) refers to expenses incurred for the care, treatment, or boarding of any animal taken into custody under K.S.A. 2018 Supp. 21-6412(e). Taking into custody echoes the language of K.S.A. 2018 Supp. 21-6412(e), which grants "[a]ny public health officer, law enforcement officer, licensed veterinarian or officer or agent of any animal shelter or other appropriate

5

facility" the authority to take into custody any animal showing clear evidence of animal cruelty.

Under K.S.A. 2018 Supp. 21-6412(g), the key word is "pending," which acts as a timing mechanism for when the owner of the animals should become liable for the costs. Indeed, the owner does not become liable until found guilty of such crime. If the owner is found guilty, K.S.A. 2018 Supp. 21-6412(g) mandates that the owner "shall be assessed" . . . [the] cost of the case."

As the record shows, expenses were incurred for the care, treatment, and boarding of Johnson's horses. Johnson's horses were taken into custody under K.S.A. 2018 Supp. 21-6412(e). Johnson's liability for the incurred costs did not come about until he was adjudicated guilty of this crime under K.S.A. 2018 Supp. 21-6412(g), after which he was ordered by the trial court to pay the costs of such crime. The mandatory language of K.S.A. 2018 Supp. 21-6412(g) says that the costs of such crime "shall" be assessed to the owner—Johnson.

We are guided in this inquiry by two previous cases that have considered the costs incurred in an animal cruelty case. Most significantly, in *State v. Freund*, No. 102,481, 2011 WL 135020 (Kan. App. 2011) (unpublished opinion), the defendant was convicted of animal cruelty and the costs imposed were for the care of the animals once they were seized. The costs imposed were characterized as costs under K.S.A. 21-4311(c) instead of restitution. K.S.A. 21-4311 is the previous, repealed version of the statute in the present case—K.S.A. 2018 Supp. 21-6412.

K.S.A. 21-4311(c) allowed the following:

> "Expenses incurred for the care, treatment or boarding of any animal[] taken into
> custody . . . pending prosecution of the owner or custodian of such animal for the crime

6

of cruelty to animals . . . shall be assessed to the owner or custodian as a cost of the case if the owner or custodian is adjudicated guilty of such crime."

Ultimately, the *Freund* court held that "K.S.A. 21-4311 include[d] no language allowing for reduction or elimination of that repayment obligation based on a defendant's financial circumstance." *Freund*, 2011 WL 135020, at *4. In doing so, the *Freund* court stated:

> "It is, of course, well settled that a specific statute controls over a more general statute. See *State v. Martinez*, 290 Kan. 992, Syl. ¶ 6, 236 P.3d 481 (2010) ("Under statutory interpretation rules, a more specific statute must control over a more general statute."); *State v. Raschke*, 289 Kan. 911, 923, 219 P.3d 481 (2009) (noting rule and applying it to hold that mandatory fines for repeat forgery offenders control over the statute governing fines generally and its provision allowing a court to take ability to pay into account). Based on that rule of construction and the treatment of mandatory fines in *Raschke*, we reject Freund's argument that the trial court had some legal obligation to consider his ability to pay in fixing the costs assessed as part of his sentence. Those costs were not restitution, but a mandatory reimbursement required specifically upon conviction under the animal cruelty statute." 2011 WL 135020, at *4.

Thus, the *Freund* court held that the more specific statute was K.S.A. 21-4311(c) and not the general restitution statutory scheme statute—K.S.A. 21-4610(d)(1). Because the costs were not imposed as restitution under K.S.A. 21-4610(d)(1), but as costs under K.S.A. 21-4311(c), the *Freund* court held that these costs did not require an assessment of the defendant's financial situation. 2011 WL 135020, at *4.

As stated previously, K.S.A. 21-4311(c) was ultimately repealed and recodified under K.S.A. 2018 Supp. 21-6412(g), and the language at issue is almost identical to the previous version of K.S.A. 21-4311(c).

We revisited this same issue in *State v. Ibrahim*, No. 106,953, 2013 WL 195516 (Kan. App. 2013) (unpublished opinion). There, the defendant "contend[ed] that the trial court erred in assessing against him the costs the county incurred in maintaining the horses after they were seized from his property. He maintain[ed] that . . . restitution is conditioned on a proper seizure and boarding." 2013 WL 195516, at *12.

The trial court in that case actually assessed those costs under K.S.A. 21-4311(c). This court then issued a very short holding with the following reasoning:

> "In *State v. Freund*, No. 102,481, 2011 WL 13502, at *4 (Kan. App. 2011) (unpublished opinion), our court interpreted K.S.A. 21-4311(c) to be a mandatory reimbursement required specifically upon conviction under the animal cruelty statute.
> "Based on *Freund* and K.S.A. 21-4311(c), the trial court was required to order Ibrahim to pay the expenses incurred by the Osage County Sheriff's Department in the care of the horses after it found him guilty of animal cruelty. And as stated earlier, there was sufficient evidence to find Ibrahim guilty of cruelty to animals and the seizure of the horses was lawful; therefore, because the trial court properly convicted Ibrahim of animal cruelty, it was required to assess the costs of the case to him." 2013 WL 195516, at *12.

It is clear from *Freund*, *Ibrahim*, and K.S.A. 2018 Supp. 21-6412(g) that the costs are mandatory. Also, the financial resources of the owner found guilty of animal cruelty are not to be considered when assessing the costs incurred.

*A payment plan when characterized as court costs*

Next, we must determine whether a payment plan was necessary if the costs are instead characterized as court costs, as opposed to restitution. For one thing, "restitution and court costs are two different things." *State v. Gentry*, 310 Kan. 715, 738, 449 P.3d 429 (2019). Court costs are subject to K.S.A. 22-3801 and K.S.A. 28-172a, while restitution is governed by K.S.A. 2021 Supp. 21-6604. There is no indication in caselaw or otherwise that a payment plan is required when court costs are imposed, especially

within the statute at issue—K.S.A. 2018 Supp. 21-6412(g). Finally, had the Legislature intended to allow a payment plan under K.S.A. 2018 Supp. 21-6412(g), it clearly knew how to enact such provisions. See K.S.A. 2018 Supp. 21-6604(b).

Affirmed.