NOT DESIGNATED FOR PUBLICATION

No. 121,264

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT EUGENE HENDERSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Geary District Court; COURTNEY D. BOEHM, judge. Opinion filed January 29, 2021. Affirmed.

*Jonathan F. Andres*, *pro hac vice*, of Jonathan F. Andres PC, of St. Louis, Missouri, and *Michael E. Francis*, of Topeka, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., GARDNER, J., and BURGESS, S.J.


ATCHESON, J.: During a traffic stop that turned into a full search of Defendant Robert Eugene Henderson's pickup, Junction City police discovered nearly $450,000 in cash, bundled and stowed in a hidden compartment, and confiscated documents and other materials indicative of marijuana trafficking. Henderson offered law enforcement officers what might charitably be characterized as an unusual explanation for the cash: He said he earned the money through real estate transactions over the course of three decades and had buried those profits on land he owned in Massachusetts and had just retrieved the money to buy a 250-acre tract in Oregon where he now lived. Henderson also offered to

share some of the money with the officers. They suggested that sounded like a bribe and declined.

As a result of the June 2015 traffic stop, the State charged Henderson with alternative counts of having an unlawful association with money that was to be used for or had been derived from the trafficking of illegal drugs, severity level 2 felony violations of K.S.A. 2014 Supp. 21-5716(a) and (b) based on the amount of cash seized. The State also charged Henderson with bribery, a severity level 7 nonperson felony violation of K.S.A. 2014 Supp. 21-6001(a)(1), and misdemeanor possession of marijuana. In a two-day trial in February 2019, a jury convicted Henderson of possessing money derived from the distribution of marijuana and of bribery and found him not guilty of the alternative charge of possessing money to be used to acquire marijuana and of the marijuana possession charge. The district court later sentenced Henderson to serve 49 months in prison on the drug conviction, a substantial downward durational departure from the guidelines, and a concurrent term of 13 months on the bribery conviction to be followed by postrelease supervision for 36 months.

Henderson has appealed and challenges the denial of his motion to suppress evidence derived from the search of his pickup, the sufficiency to the evidence at trial to convict on the drug charge, and the adequacy of the jury instructions on the alternative drug counts. Henderson does not contest the bribery conviction. We find no reversible error and affirm Henderson's convictions and the resulting sentences.

*1. Motion to Suppress*

Henderson filed a motion to suppress the evidence law enforcement officers seized from his pickup following the traffic stop and any derivative evidence. Following an evidentiary hearing, the district court denied the motion.

The Kansas Supreme Court has been implacable in holding that a defendant must make a contemporaneous objection under K.S.A. 60-404 to the introduction of evidence during a jury trial to preserve appellate review of an earlier denial of a motion to suppress that evidence. *State v. Sean*, 306 Kan. 963, Syl. ¶ 1, 399 P.3d 168 (2017); *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). The failure to lodge a timely trial objection results in a forfeiture of the suppression issue.

Henderson did not make an adequate trial objection. On appeal, he argues that a hearsay objection to testimony from the officer making the stop and participating in the search about his communications with a Missouri Highway Patrol trooper during the stop was legally sufficient to preserve the suppression issue. The objection was lodged as to the statements of the trooper and not to the admission of the evidence taken from the pickup. The objection was not tailored to the ostensibly unlawful seizure and was insufficient to preserve the point. Henderson also relies on his renewal of the arguments for suppression in his motion for a judgment of acquittal during the trial and in his posttrial motions. But those arguments were untimely under K.S.A. 60-404. See *State v. Carter*, 312 Kan. 526, ___ P.3d ___, 2020 WL 7409996, at *6 (No. 120,103, filed December 18, 2020) (K.S.A. 60-404 requires "a specific and timely objection at trial in order to preserve evidentiary issues for appeal").

Because Henderson did not preserve his challenge to the legality of the search of his pickup and the seizure of evidence from it, we cannot and do not consider the issue on appeal.

*2. Sufficiency of the Evidence*

To assess the sufficiency of the evidence to convict Henderson on the drug charge, we first need to outline the statutory elements of the crime. We look at the count on which the jury convicted Henderson. The alternative count on which he was found not

guilty is functionally irrelevant. Pertinent here, an individual violates K.S.A. 2019 Supp. 21-5716(c) if he or she "facilitate[s] the transportation or transfer of proceeds known to be derived from commission of any crime in K.S.A. 2019 Supp. 21-5701 through [K.S.A.] 21-5717, and amendments thereto, or any substantially similar offense from another jurisdiction." The Kansas statutes cited as the predicate crimes generating the money cover various drug offenses. And a prosecution under K.S.A. 2019 Supp. 21-5716(c) may rely on a predicate crime from "another jurisdiction."

When Henderson was stopped in Geary County, he told law enforcement officers he was driving from Massachusetts to Oregon. That's consistent with the other evidence investigators developed. So the money would not have been derived from a drug crime committed in Kansas. The circumstantial evidence indicated Henderson was involved in marijuana trafficking. He had a planner with a calendar indicating harvest dates for marijuana and other documents with account and ledger entries indicative of trafficking. Henderson's personal cell phone had photographs of marijuana. And he had three other inexpensive cell phones in his pickup—common accouterments for drug traffickers—one of which included text messages about a marijuana delivery.

The State relied on 21 U.S.C. § 841(a)(1) (2012) as the "substantially similar" predicate drug offense to support the charge against Henderson for violating K.S.A. 2014 Supp. 21-5716(c). Under 21 U.S.C. § 841(a)(1), it is a federal crime to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Nobody disputes that marijuana is a controlled substance for purposes of the federal statute. The United States Code provides two interlocking definitions that fix the scope of distribution of controlled substances. First, 21 U.S.C. § 802(11) (2012) defines "distribute" to mean "to deliver . . . a controlled substance." In turn, 21 U.S.C. § 802(8) defines "deliver" as "the actual, constructive, or attempted transfer of a controlled substance."

4

In setting up his sufficiency challenge, Henderson makes what amount to legal arguments against the use of the federal statute as a substantially similar offense. We consider those on the way to looking at the sufficiency of the evidence. Neither has merit.

*A. United States as "Another Jurisdiction" under K.S.A. 2019 Supp. 21-5716*

First, Henderson contends that the United States or the federal courts do not qualify as "another jurisdiction" as that phrase is used in K.S.A. 2019 Supp. 21-5716(c). The term appears throughout K.S.A. 2019 Supp. 21-5716 to identify crimes from judicial systems apart from the Kansas state courts that will support the charge of carrying tainted money—money to be used to buy drugs or money generated from the sale of drugs. The United States qualifies as "another jurisdiction" for those purposes.

Broadly, of course, the treatment of the United States as a jurisdiction distinct from each state undergirds the well-recognized doctrine of dual sovereignty that permits independent prosecutions based on the same conduct in both federal court for federal crimes and state court for state crimes without violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. See *Gamble v. United States*, 587 U.S. ___, 139 S. Ct. 1960, 1966-67, 204 L. Ed. 2d 322 (2019); *In re Habeas Corpus Application of Coulter*, 18 Kan. App. 2d 795, Syl. ¶ 3, 860 P.2d 51 (1993). The United States and each state are different jurisdictions (or sovereigns) so the successive prosecutions do not offend the defendant's constitutional protections against twice being place in jeopardy or tried for the same crime. The constitutionally recognized doctrine of dual sovereignty establishes the United States as another jurisdiction distinct from Kansas and its criminal laws.

Closer to home and more immediately pertinent, the Kansas Supreme Court held the federal government was "another jurisdiction" for purposes of a sentencing enhancement provision in an earlier version of the Kansas statutes criminalizing drug use

5

and distribution. *State v. Rome*, 269 Kan. 47, 49, 5 P.3d 515 (2000). There, the court recognized that a federal drug conviction could be counted as one for a "'substantially similar offense from another jurisdiction'" under K.S.A. 1989 Supp. 65-4127a and, therefore, used to enhance Rome's sentence for selling cocaine in violation of Kansas law. Although the recidivist statute for drug offenders was repealed with the adoption of the sentencing guidelines, the court's construction of the operative phrase remains intact and has presumably guided the Legislature in crafting K.S.A. 2019 Supp. 21-5716 criminalizing conduct associated with money generated through drug trafficking. See Scalia & Garner, Reading Law: The Interpretation of Legal Texts 323 (2012) ("[W]hen a statute uses the very same terminology as an earlier statute—especially in the same field, such as securities law or civil-rights law—it is reasonable to believe that the terminology bears a consistent meaning.").

Henderson, nonetheless, tries to muster a statutory argument for his position by pointing to one part of K.S.A. 2019 Supp. 21-5716(d) that criminalizes what may be broadly considered laundering of drug proceeds to hide their illegitimate origins. The subsection first proscribes transactions designed to "conceal or disguise the nature . . . of the proceeds derived from" any Kansas drug crime or "any substantially similar offense from another jurisdiction." K.S.A. 2019 Supp. 21-5716(d). And in that respect the language mirrors K.S.A. 2019 Supp. 21-5716(c) and the other subjections of the statute. But K.S.A. 2019 Supp. 21-5716(d) also proscribes conduct intended "to avoid a transaction reporting requirement under state or federal law." Henderson contends the reference to "federal law" in that narrow portion of K.S.A. 2019 Supp. 21-5716(d) demonstrates the Legislature must have intended the repeated references throughout the statute to "another jurisdiction" to exclude the United States. We are unpersuaded. The language Henderson cites deals with a particularized aspect of money laundering tied to specific statutory prohibitions and is both tailored and limited to that purpose. There is no sound reason to construe that language as somehow limiting the comparatively sweeping

provisions in the other subsections of K.S.A. 2019 Supp. 21-5716 designed to criminalize a wide swath of conduction associated with money used in drug trafficking generally.

Although a specific statute will control over a more general statute that might otherwise apply to a given circumstance, that rule of construction doesn't help Henderson. See *State v. Martinez*, 290 Kan. 992, Syl. ¶ 6, 236 P.3d 481 (2010) ("Under statutory interpretation rules, a more specific statute must control over a more general statute."). None of the money laundering prohibitions in K.S.A. 2019 Supp. 21-5716(d) even arguably apply to his conduct. And the language from a narrow part of that subsection should not be used to construe different language in another subsection, especially without some apparent need to do so. Another canon of construction directs that a term or operative phrase repeated throughout a statute commonly should be given a constant meaning. See *Law v. Siegel*, 571 U.S. 415, 422, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014) (applying "'"normal rule of statutory construction"'" recognizing that "words repeated in different parts of the same statute generally have the same meaning"). Conversely, different phrases should be ascribed different meanings. See *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (use of different terms within a statute demonstrates legislative intent to convey different meanings); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016) ("The normal presumption is that the employment of different words within the same statutory scheme is deliberate, so the terms ordinarily should be given differing meanings."). The rule would give independent meaning to "another jurisdiction" as a freestanding term repeated throughout K.S.A. 2019 Supp. 21-5716 without particular regard to the statutory description of specific laws policing financial transactions for money laundering. Those precepts shoot down Henderson's effort to revise the otherwise unambiguous term "another jurisdiction" in K.S.A. 2019 Supp. 21-5716(c).

In short, Henderson's argument that federal criminal law should not be considered the law of "another jurisdiction" collides with logic, relevant case authority, and canons

7

of statutory construction. The term "another jurisdiction" is neither ambiguous nor otherwise in apparent need of clarification. The phrase fairly and reasonably includes the United States, operating through the federal judicial system to implement congressional enactments. Henderson never satisfactorily explains what the federal courts are if not a jurisdiction enforcing federal laws.

*B. Definitions of "Distribute" under Federal and Kansas Law*

Henderson next contends the definition of "distribute" as used in 21 U.S.C. § 841(a)(1) is not "substantially similar" to the definition used in the Kansas drug statutes. Here, the comparable predicate Kansas drug crime would be K.S.A. 2019 Supp. 21-5705(a)(4) making it unlawful for "any person to distribute or possess with the intent to distribute" proscribed controlled substances, including marijuana. For purposes of K.S.A. 2019 Supp. 21-5705(a), "distribute" means "the actual, constructive or attempted transfer from one person to another of some item" and "includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another." K.S.A. 2019 Supp. 21-5701(d) (definition of "distribute").

The acts or conduct encompassed in "distribute" as defined in Article 57 of the Kansas Criminal Code are the same as the acts or conduct covered in "distribute" and its incorporation of "delivery" under Title 21, Chapter 13 of the United States Code. Specific statutes within the federal and Kansas schemes then proscribe the distribution of various controlled substances. Both schemes, of course, criminalize the distribution of marijuana. In that respect, the relevant statutes are not only "substantially similar," they are functionally the same. Henderson's point is without merit.

Henderson advances a related and befuddled argument that K.S.A. 2019 Supp. 21-5716, as a statute addressing money associated with drug trafficking, is not substantially similar to 21 U.S.C. § 841(a)(1), as a statute addressing the sale or distribution of illegal

8

drugs. As an abstract proposition that arguably might be true, but it misperceives what is being criminalized in K.S.A. 2019 Supp. 21-5716. As we have explained, the statute proscribes the handling of money connected to illegal drugs. The money must be linked to a drug transaction of the kind criminalized in another Kansas statute or criminalized in a substantially similar statute from another jurisdiction. So the comparison for substantial similarity is between the statutes criminalizing the drug trafficking activity, not the handling of the money. We have made the proper comparison and have concluded 21 U.S.C. § 841(a)(1) is substantially similar to K.S.A. 2019 Supp. 21-5705(a)(4). Henderson's contention depends upon the legal equivalent of a magician's poorly executed sleight of hand—the trick is apparent to anyone looking closely.

*C. Sufficiency of the Evidence to Support the Conviction*

Having cleared away those contentions, we directly address Henderson's sufficiency of the evidence argument. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing below, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 845; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Especially given the deferential standard governing our review, we have little difficulty finding sufficient evidence to support the jury's verdict convicting Henderson of transporting money derived from the distribution of marijuana. Henderson had $447,640 in cash hidden in his pickup. He had another $6,640 in cash in plain sight. Henderson offered law enforcement officers a facially implausible explanation for the money. Investigators confiscated documents from the pickup consistent with growing and

merchandizing marijuana. Henderson had three inexpensive, prepaid cell phones—burner phones often favored by drug traffickers—and a fourth personal cell phone. One of the prepaid phones and Henderson's personal phone had stored content related to marijuana and trafficking. Those circumstances were largely unrebutted at trial, since Henderson did not testify and offered no other evidence. Moreover, the jurors plainly discounted as false Henderson's improbable explanation for the large amount of cash he had. They, in turn, could treat Henderson's very offer of such a fabrication as consciousness of guilt. See *United States v. Holbert*, 578 F.2d 128, 129 (5th Cir. 1978) ("long line of authority . . . recognizes that false exculpatory statements may be used not only to impeach, but also as substantive evidence tending to prove guilt"); *United States v. Lepore*, No. 1:15-cr-00367-WSD, 2016 WL 4975237, at *2 (N.D. Ga. 2016) (unpublished opinion) ("False exculpatory statements may be used as evidence of consciousness of guilt.").

Henderson suggests the evidence was insufficient because the State did not prove he personally sold any marijuana. The evidence did not establish a particular transaction or series of transactions in which marijuana was exchanged for the money law enforcement officers found in the pickup. But a violation of K.S.A. 2019 Supp. 21-5716(c) does not require the person transporting the money to have participated in the sale of the illegal drugs that generated the money. The items Henderson had with him in his pickup forged a reasonable and, indeed, compelling link between the money and marijuana trafficking. That someone other than Henderson might have conducted the sale or sales is legally irrelevant to his criminal liability for transporting the proceeds of those transactions. The evidence put Henderson in league with marijuana traffickers, even if he personally never bought or sold marijuana.

Without belaboring the point, the evidence was sufficient to overcome the presumption of innocence and to support the jury's verdict. See *State v. Thach*, 305 Kan.

10

72, 84, 378 P.3d 522 (2016) (even gravest crimes may be proved with only circumstantial evidence).

*Adequacy of the Jury Instructions*

Henderson contends the jury instructions on the alternative charges against him under K.S.A. 2014 Supp. 21-5716(b) and (c) suffer from multiple deficiencies. He has failed to demonstrate any prejudicial error.

The two instructions the district court used to explain the elements of the alternative charges to the jury are interlocking, so we set forth both. The instruction on the charged violation of K.S.A. 2014 Supp. 21-5716(b) stated:

In Count 1, the defendant is charged with transporting proceeds known to be derived from the crime of distribution of marijuana. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant transported U.S. currency, a thing of value which defendant knew was intended to be used for the purpose of furthering the commission of the crime of distribution of marijuana.

"2. The value of the proceeds was at least $250,000 but less than $500,000.

"3. This act occurred on or about the 2nd day of June, 2015, in Geary County, Kansas.

"'Distribute' means the actual, constructive, or attempted transfer of an item from one person to another, whether or not there is an agency relationship between them. 'Distribute' includes sale, offer for sale, or any act that causes an item to be transferred from one person to another.

"'Distribute' does not include acts of administering, dispensing, or prescribing a controlled substance as authorized by law.

"The [S]tate must prove that the defendant committed the crime of criminal transportation of drug proceeds intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the [S]tate."

11

The jury found Henderson not guilty on that charge. The instruction on the alternative charge under K.S.A. 2014 Supp. 21-5716(c)—on which the jury convicted Henderson—stated:

> "In Count 2, the defendant is charged with transportation of proceeds known to be derived from the crime of distribution of marijuana. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "1. The defendant directed, planned, organized, initiated, financed, managed, supervised, facilitated the transportation of proceeds known to be derived from the crime of distribution of marijuana.
> "2. The value of the proceeds was at least $250,000 but less than $500,000.
> "3. This act occurred on or about the 2nd day of June, 2015, in Geary County, Kansas.
> "The definition of 'the crime of distribution' and 'distribute' are found in [I]nstruction 7.
> "The [S]tate must prove that the defendant committed the crime of criminal transportation of drug proceeds intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the [S]tate."

During the trial, Henderson submitted different elements instructions to the district court and objected to the instructions the jury received. We, therefore, assume Henderson has fully preserved the instructional issue for appellate review. We examine challenged jury instructions for legal and factual appropriateness. And if there is preserved error, we review the error for harmlessness consistent with the standards established in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). See *State v. Plummer*, 295 Kan. 156, 162-63, 283 P.3d 202 (2012); *State v. White*, 55 Kan. App. 2d 196, 204, 410 P.3d 153 (2017).

For his first point on the jury instructions, Henderson says they did not exactly conform to PIK Crim. 4th 57.220 and the Notes on Use for the pattern instruction. Although Henderson is correct, the observation doesn't advance his

12

cause for error. That's because the Note on Use is inaccurate. The Note suggests that for violations of K.S.A. 21-5716(b) and (c) only a Kansas drug crime can serve as the underlying or predicate offense to which the money relates. And the Note indicates a substantially similar predicate offense from another jurisdiction will support a charge under only K.S.A. 21-5716(a). As we have already explained, the statutory language for K.S.A. 2019 Supp. 21-5716(b) and (c) plainly includes both Kansas drug crimes and substantially similar offenses from other jurisdictions as predicate offenses.

For some reason, Henderson argues the district court had to strictly conform the jury instructions to PIK Crim. 4th 57.220 and the Note on Use and the deviation necessarily amounted to error. The argument is premised on a misunderstanding of Kansas law governing jury instructions. While district courts are strongly encouraged to use the pattern jury instructions, they are not obligated to do so. See *State v. Bernhardt*, 304 Kan. 460, 470, 372 P.3d 1161 (2016). And they may modify a pattern instruction to fit the circumstances of a particular case. 304 Kan. at 470. The pattern instructions are neither mandatory nor flawless. It, therefore, follows that a district court ought to tailor the instructions to smooth out any wrinkles. In the exceedingly rare instances when the pattern instructions might be less than entirely accurate, the district court may revise them.

Henderson cannot claim error simply because the district court's jury instructions deviated from PIK Crim. 4th 57.220, as described in the Note on Use.

Henderson, however, also contends the jury instructions were substantively incorrect in how they defined "distribute" for purposes of describing the predicate crime of distributing marijuana. The instructions used the definition of distribute in K.S.A. 2014 Supp. 21-5701(d). But the predicate offense was distribution of marijuana in violation of federal law codified in 21 U.S.C. § 841(a)(1).

13

Accordingly, the definition of distribute in the jury instruction should, likewise, have been drawn from federal law. To that extent, Henderson has identified an error in the instructions. It is, however, harmless under either standard outlined in *Ward*. That's because the definition of "distribute" in 21 U.S.C. § 802(11) expressly incorporates the definition of "delivery" in 21 U.S.C. § 802(8). As we have already explained, the full definition of "distribute" (in tandem with "delivery") under federal law is the legal equivalent of the definition of "distribute" in K.S.A. 2019 Supp. 21-5701(d).

The *Ward* standard for error implicating a defendant's constitutional rights would be the more favorable for Henderson. We assume that applies, since the error ostensibly affects the jury's understanding of the elements of the crime the State must prove to convict. See *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *State v. Dobbs*, 297 Kan. 1225, 1238, 308 P.3d 1258 (2013) (recognizing "constitutional requirement that the State prove every element of the crime beyond a reasonable doubt"). Under that standard, we may declare the error harmless if we are persuaded beyond a reasonable doubt that it did not affect the outcome in light of the entire trial record. *Ward*, 292 Kan. 541, Syl. ¶ 6.

Henderson points out the jury instruction referred to the sale, an offer to sell, or other acts causing a transfer as examples illustrating distribution. The language comes from K.S.A. 2014 Supp. 21-5701(d) and is not found in 21 U.S.C. § 802(8) or (11). As we have outlined, however, the instruction contained a core definition of distribute—"the actual, constructive, or attempted transfer" of marijuana—that is common to both the Kansas and federal statutes. The additional, illustrative language did not expand or otherwise materially alter the

14

operative definition of the term "distribute." See *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1127 n.1 (10th Cir. 2009) (noting federal courts have broadly construed "distribute," as defined in 21 U.S.C. § 802, to include acts furthering transfer or sale of controlled substance); *Benjamin v. U.S. Attorney General*, 682 Fed. Appx. 725, 728-29 (11th Cir. 2017) (unpublished opinion) (attempted sale of controlled substance constitutes distribution under 21 U.S.C. § 802 and, thus, criminal conduct under 21 U.S.C. § 841[a][1]). The additional language taken from the Kansas definition may have been surplusage. It did not, however, misstate the federal law.

Although the district court technically may have drawn the definition for the instructions from the wrong source, the term "distribute" was, nonetheless, accurately defined for the jury. A substantively accurate jury instruction typically would not inject reversible error into a trial. That's true here. The instructions did not impermissibly facilitate an unwarranted conviction of Henderson.

*Conclusion*

Having reviewed the points Henderson has raised, we find no basis for reversing his conviction for violating K.S.A. 2014 Supp. 21-5716(c) and his resulting sentence. Henderson's undisputed conviction for bribery likewise stands.

Affirmed.

* * *

ATCHESON, J., concurring: Not surprisingly, I concur in the panel opinion affirming Defendant Robert Eugene Henderson's convictions and sentences. We are obligated to follow the Kansas Supreme Court's construction of the contemporaneous

15

objection rule codified in K.S.A. 60-404 to preclude appellate review of the Geary County District Court's denial of Henderson's motion to suppress. I have previously outlined why that approach ill serves the interests of basic fairness in criminal cases and promotes no sound countervailing policy objectives. *State v. White*, No. 109,953, 2014 WL 5312873, at *8-15 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring). I do not repeat the discussion here, but I remain of that view. I offer no opinion on the merits of Henderson's motion to suppress and suggest only that we ought to be permitted to reach the merits.