NOT DESIGNATED FOR PUBLICATION

No. 121,854

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TOMMIE BAGGETT,
*Appellant*.


MEMORANDUM OPINION


Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed November 24, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., HILL and HURST, JJ.


PER CURIAM: A jury convicted Tommie Baggett of three counts of attempted rape, three counts of aggravated battery, and two counts of aggravated burglary for his acts against three victims, but it acquitted Baggett of several other crimes involving a fourth victim. Baggett appeals his convictions, arguing (1) insufficient evidence supports two of his three attempted rape convictions; (2) the State improperly bolstered the credibility of its witnesses during closing arguments; and (3) the district court abused its discretion by allowing the State to prosecute him as an adult. Baggett also challenges his sentence, arguing that the district court violated his constitutional rights by sentencing

1

him to an aggravated sentence without requiring the State to prove aggravating factors to the jury beyond a reasonable doubt. Baggett also argues that the district court erred by ordering restitution without establishing a restitution payment plan. But having reviewed the record, we find no reversible error and affirm.

*Factual and Procedural Background*

Police arrested Baggett for possession of marijuana on January 19, 2018. After collecting a sample of Baggett's DNA while booking him, police learned that Baggett's DNA profile matched that of an unidentified person suspected in four sexual assaults in Manhattan, Kansas, in 2016 and 2017.

The State charged Baggett with one count of rape, two counts of aggravated criminal sodomy, and two counts of aggravated robbery for the 2016 incident. The State charged Baggett with three counts of attempted rape, two counts of aggravated battery, two counts of aggravated burglary, and one count of battery for the 2017 incidents.

Baggett was 16 and 17 years old when he allegedly committed these crimes. Although the State originally charged Baggett as a juvenile, it later moved to prosecute him as an adult. At the hearing on that motion, the State argued that if convicted as a juvenile or in an extended juvenile jurisdiction (EJJ) prosecution, Baggett would likely be released from prison at the age of 22 and would have to serve only six months of aftercare services. The district court granted the State's request to prosecute Baggett as an adult.

The State charged Baggett with one count of rape, two counts of aggravated criminal sodomy, one count of aggravated robbery, three counts of attempted rape, two counts of aggravated burglary, and three counts of aggravated battery, as summarized below:

2

| Victim | Date | Place | Charges |
|--------|------|-------|---------|
| T.M. | August 7, 2016 | Park | Rape, two counts of aggravated criminal sodomy, and aggravated robbery. |
| R.R. | February 19, 2017 | Thurston Street House | Attempted rape and aggravated battery. |
| A.R. | February 19, 2017 | Thurston Street House | Attempted rape, aggravated burglary, and aggravated battery. |
| J.H. | March 12, 2017 | Thurston Street House | Attempted rape, aggravated burglary, and aggravated battery. |

At the jury trial, the State presented testimony from several witnesses, including the four victims, and it admitted DNA evidence connecting Baggett to all four crimes. Baggett testified on his own behalf, largely about the incident with T.M. in the park. The jury apparently credited his testimony, as it acquitted him of those charges. But Baggett gave little information about the incidents at the Thurston Street house. He did not know if he had ever been there or where he was on the dates A.R., R.R., and J.H. were assaulted. Baggett did not know if he was drunk around the time of the incident involving J.H. but admitted that he was in Aggieville on Fake Patty's Day 2017.

During deliberations, the jury asked for and heard a read back of T.M. and J.H.'s testimonies. The jury also asked for clarification on "the statement in the prosecution's closing arguments about considering all evidence and testimonies as opposed to 'you must decide each charge separately on the evidence and the law applicable to it.'" After discussing the jury's question with the attorneys, the district court gave the jury a written response that directed them to weigh all the evidence and referred them to certain instructions.

3

The jury deliberated for several hours before returning a verdict convicting Baggett of the crimes against A.R., R.R., and J.H. in the Thurston Street house, and acquitting him of the crimes against T.M. in the park.

At sentencing, defense counsel asked the district court to impose the standard guidelines' sentence of 72 months' imprisonment and run the remaining counts concurrent with the controlling offense. The district court denied that request, finding, "specifically on the aggravated portion that this was an offense that was committed in a brutal fashion and attempted choking of the victim, and therefore the aggravated sentence is appropriate." The district court sentenced Baggett to the aggravated guidelines' sentence of 154 months' imprisonment and ordered him to pay $12,981.77 in restitution. The court did not, however, set out a specific restitution payment plan or order Baggett to pay the entire amount immediately.

Baggett appeals, challenging his convictions and his sentence.

I.   *Does Sufficient Evidence Support Baggett's Convictions of Attempted Rape of A.R. and J.H.?*

Baggett challenges two of his three convictions for attempted rape, arguing the State failed to prove beyond a reasonable doubt the elements necessary to establish that he attempted to rape A.R. or J.H.

*Standard of Review*

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court and in support of the jury's verdicts. We do not reweigh evidence or make credibility determinations. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d

4

116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). Instead, we simply review whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

*Attempted Rape*

The State charged Baggett with attempted rape under K.S.A. 2016 Supp. 21-5503(a)(l)(A). That statute defines rape as "[k]nowingly engaging in sexual intercourse with a victim who does not consent to the sexual intercourse . . . [w]hen the victim is overcome by force or fear." K.S.A. 2016 Supp. 21-5503(a)(1)(A). An attempt is defined in K.S.A. 2016 Supp. 21-5301(a) as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." So to prove attempted rape, the State had to prove Baggett:

(1) committed overt acts toward raping A.R. and J.H.;

(2) intended, but failed, to rape A.R. and J.H; and

(3) did so when A.R. and J.H. were overcome by force or fear. See K.S.A. 2016 Supp. 21-5301(a); K.S.A. 2016 Supp. 21-5503(a)(l)(A).

Baggett challenges various elements for both crimes.

*Evidence of Overt Acts*

First, Baggett alleges insufficient evidence of any overt act as to the crimes against A.R. and J.H.

5

Our Supreme Court has long held that in proving a defendant committed an overt act, the State must show the defendant's attempt to rape a victim progressed sufficiently toward the execution of a rape to clearly establish the defendant had criminal intent. See, e.g., *State v. Peterman*, 280 Kan. 56, 64, 118 P.3d 1267 (2005); *In re Lloyd*, 51 Kan. 501, 502, 33 P. 307 (1893). An "overt act requires an act beyond mere preparation, which can be considered a first or subsequent step in a direct movement towards completing the crime." *State v. Martinez*, 290 Kan. 992, 1003, 236 P.3d 481 (2010). There is "'[n]o definite rule as to what constitutes an overt act for the purposes of attempt . . . . Each case must depend largely on its particular facts and the inferences which the jury may reasonably draw therefrom.'" *State v. William*, 248 Kan. 389, 404, 807 P.2d 1292 (1992); *State v. Garner*, 237 Kan. 227, Syl. ¶ 3, 699 P.2d 468 (1985). A charge of attempted rape may be established without evidence of attempted penetration. *State v. Lowrance*, 298 Kan. 274, 296, 312 P.3d 328 (2013); *State v. Gonzales*, 245 Kan. 691, 698, 783 P.2d 1239 (1989). And physical evidence of trauma is not necessary. *Lowrance*, 298 Kan. at 296-97.

The jury was instructed to consider Baggett's actions of getting "on top of A.R." and entering J.H.'s bedroom as overt acts that could establish an attempt to commit rape. The State presented direct evidence to prove both.

J.H. testified that on March 11, 2017, she celebrated Fake Patty's Day by drinking throughout the day and evening with friends. Around midnight, she went home to the Thurston Street residence and fell asleep in her basement bedroom. She awoke around 3 a.m. to someone standing over her and talking to her. He asked if she wanted to have sex and called her "baby." When she turned on the lamp next to her bed, the man responded "no, no, no," then jumped on top of her, sat on her, and started strangling her. She could not reach the man's face or move her legs. She screamed for one of her housemates until she could not breathe anymore.

Eventually, J.H. stopped breathing. The man jumped off her, grabbed a dark bag from the edge of her bed, and ran up the stairs and out the back door of the house. Her assailant did not grope her or try to take her clothes off, and he had all of his clothes on. Baggett's DNA was later found to be consistent with DNA taken from a glove found in J.H.'s bedroom.

A.R. testified that "an individual was on top of [her]." Although she was not totally conscious of her surroundings when she was attacked, she knew someone was on top of her, choking her and telling her to shut up:

> "I didn't really know what was going on, and my body was just kind of in a fight or flight mode. It was—I was just very confused, and I just knew that I couldn't breathe, and I was in an odd position on the bed, and I was keeping my legs together, and I just remember trying to say please stop, like let me breathe, please stop. And an individual was on top of me telling—like whispering yelling at me to shut up. Just be quiet. I couldn't get anything out, though."

Viewed in the light most favorable to the State, this evidence is sufficient to show that Baggett made overt acts toward raping A.R. and J.H. See *Peterman*, 280 Kan. at 60-61, 64 (finding sufficient evidence of an overt act toward attempted rape when the defendant drove to meet, but never came near, his intended victim).

*Evidence of Intent to Rape*

Secondly, Baggett argues that insufficient evidence supports the jury's finding that he intended to rape A.R. or J.H.

As to J.H., Baggett argues that he did not grope her or try to disrobe her and that he was fully clothed. But Baggett ignores her testimony that he attacked her, called her

7

"baby," and repeatedly asked J.H. for sex. When we consider *all* the evidence, we find it sufficient to support the intent element of the crime of attempted rape of J.H.

As to A.R., Baggett argues that the evidence shows only his intent to strangle her. Baggett points out that A.R.'s testimony that she "was keeping [her] legs together" fails to show *why* she kept her legs together. Baggett notes A.R.'s acknowledgment to police that she instinctively kept her legs closed, and she did not allege that Baggett was unclothed or that he groped her.

A.R. testified that she drank at several house parties with R.R. and other friends on February 18, 2017. The last thing she remembered that evening was standing in a line outside a bar in Aggieville. She did not remember returning home or getting into bed and admitted that she was "hammered." The next thing A.R. remembered was waking up lying diagonally across her bed, unable to breathe. She was confused but knew she could not breathe and purposefully kept her legs together, while pleading with someone to stop what he was doing. A.R. was not sure what happened next but "felt like [she] kind of just fell back asleep." A.R. was not able to identify whether her attacker had pants on but she remained clothed. She remembered R.R. coming into her room and speaking to her, and when R.R. explained what had happened in her room, A.R. felt like "something like that happened to [her]" too.

Baggett isolates A.R.'s testimony, but the jury was not required to do so—it was permitted to consider her testimony along with other evidence in determining Baggett's intent. In the context of relevancy to prove intent, similarity is important; but "'[p]roving intent does not require as much detailed similarity as proving identity.'" *State v. Drennan*, 278 Kan. 704, 718, 101 P.3d 1218 (2004) (quoting *State v. Synoracki*, 253 Kan. 59, 73, 853 P.2d 24 [1993]), *overruled in part on other grounds by State v. Neighbors*, 299 Kan. 234, 328 P.3d 1081 (2014). Similarity was shown here: A.R. and R.R. were attacked in the same house, on the same early morning, one after another. Both were strangled in

8

their beds by the same assailant. Given the similarities in time, place, and manner of the crimes of conviction, the jury could consider events related to Baggett's attempted rape of R.R. in determining his intent to rape A.R. See *State v. Robinson*, 303 Kan. 11, 254-55, 363 P.3d 875 (2015) (evidence of "common scheme and course of conduct" of luring women to exploit and kill them could be used to infer specific intent to inflict bodily injury of victim); *Drennan*, 278 Kan. at 718 (prior murder was probative of intent and premeditation, given similarity of incidents); *State v. Ojeda*, No. 105,438, 2012 WL 3289944, at *5 (Kan. App. 2012) (unpublished opinion) (finding trial court properly told jury it could consider events related to rape of one victim to determine intent to commit attempted rape of another victim).

Baggett concedes the jury had sufficient evidence of his intent to rape R.R. Accordingly, we summarize her testimony here. R.R. testified that the day before she was assaulted, she attended house parties and drank "a good amount" of alcohol before returning to her house on Thurston Street. When she got home, she went directly to bed. R.R. awoke to the sound of a man's voice and discovered a man (Baggett) standing next to her bed. Baggett asked R.R., "[A]re we gonna do this," which R.R. interpreted as a question about sexual intercourse. R.R. asked Baggett who he was and what he wanted. She told Baggett she needed to go to the bathroom but Baggett pushed her down on the bed and became "really forceful." She struggled to shut her legs, could feel Baggett's penis on her thigh, knew he was trying to get in between her legs, and began screaming for help. Baggett alternated between covering R.R.'s mouth and strangling her. Every time she screamed, Baggett told her to "shut up." During the struggle, R.R. reached toward Baggett's head to grab him in the eyes and hit his face. After being hit, Baggett stormed out of her room.

After a while, R.R. went to find her housemate, A.R., downstairs. When she entered A.R.'s room to tell her what happened, she could tell that "something seemed off" with her. A.R. was "out of it and seemed confused" and was looking around the room for

9

the contents of her purse, which were strewn across the room. A.R. asked R.R. where her phone and debit card were. When R.R. told A.R. what had happened to her, A.R. responded that someone had come into her room and choked her, and she had had to keep her legs together. R.R. then noticed that A.R.'s eye had a "giant red line on it."

R.R. and A.R. reported the incidents to police. Officers administered preliminary breath tests to both women—R.R.'s preliminary result was 0.157 and A.R.'s was 0.121. The officer noted a petechiae in A.R.'s left eye. Baggett's DNA was determined to be "consistent" with DNA taken from R.R. and A.R.'s necks and fingernails.

Even though A.R.'s testimony, viewed alone, was weak evidence of Baggett's intent, other evidence supports the jury's finding that Baggett intended to rape A.R. "Intent is difficult, if not impossible, to show by definite and substantive proof." *State v. Lassley*, 218 Kan. 758, 762, 545 P.2d 383 (1976). A jury may rely on circumstantial evidence to infer intent, such as "'acts, circumstances, and inferences reasonably deducible therefrom.'" *Martinez*, 290 Kan. at 1004, *abrogated on other grounds by State v. Brown*, 305 Kan. 674, 387 P.3d 835 (2017); *State v. Salcido-Corral*, 262 Kan. 392, 398, 940 P.2d 11 (1997). One of the circumstances the jury could consider in determining Baggett's intent to rape A.R. was his attempted rape of R.R. The evidence, viewed in the light most favorable to the prosecution, is sufficient to support the jury's finding beyond a reasonable doubt that Baggett intended to rape A.R. and J.H. See *State v. Arnold*, 1 Kan. App. 2d 642, 643-44, 573 P.2d 1087 (1977), *rev'd on other grounds* 223 Kan. 715, 576 P.2d 651 (1978).

*Evidence of Force or Fear*

Third, Baggett asserts that the evidence fails to show J.H. was overcome by force or fear. Baggett argues that a "request for sex" from "a woman . . . so intoxicated that she [could not] consent" does not sufficiently show an intent to rape by force or fear, as

10

required under K.S.A. 2016 Supp. 21-5503(a)(1)(A). Instead, Baggett maintains that such evidence shows only an intent to rape under circumstances of intoxication. See K.S.A. 2016 Supp. 21-5503(a)(2).

Force or fear is a "highly subjective concept that does not lend itself to definition as a matter of law." *State v. Tully*, 293 Kan. 176, 198, 262 P.3d 314 (2011). Lacking a definition, we sometimes consider what is *not* required to prove force:

> "'The "force" required to sustain a rape conviction in this state does not require that a rape victim resist to the point of becoming the victim of other crimes such as battery or aggravated assault. K.S.A. 21-3502 [now K.S.A. 2017 Supp. 21-5503] does not require the State to prove that a rape victim told the offender she did not consent, physically resisted the offender, and then endured sexual intercourse against her will. It does not require that a victim be physically overcome by force in the form of a beating or physical restraint. It requires only a finding that she did not give her consent and that *the victim was overcome* by force or fear to facilitate the sexual intercourse.' *State v. Borthwick*, 255 Kan. 899, 914, 880 P.2d 1261 (1994)." *State v. Wisner*, No. 118,705, 2019 WL 324998, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1071 (2019).

But here, the evidence shows an assault by Baggett and resistance by J.H. Baggett entered J.H.'s dark room in the middle of the night and, when J.H. turned on her bedside lamp, Baggett screamed "no, no, no" and launched an immediate physical attack against her, straddling her waist and strangling her until she could no longer breathe. The jury could reasonably infer from the circumstances of the incident that J.H. was overcome by force or fear. And because Baggett had asked for sex before attacking her, it could reasonably infer that J.H. was overcome by force or fear, facilitating his attempted rape.

Baggett also contends that even if his statements sufficiently proved he intended to rape J.H. *before* he physically attacked her, the State still needed to show he intended to rape J.H. *after* he attacked her to establish the force or fear element of the crime.

11

Baggett thus invites us to incorporate the negligence principle of intervening acts in this criminal case. But an intervening cause may absolve a defendant of criminal responsibility only if it was not foreseeable. *State v. Anderson*, 270 Kan. 68, 76-77, 12 P.3d 883 (2000). And in criminal cases, a victim's or third party's act will cut off criminal liability only if it is the sole legal cause of harm. See *State v. Kirby*, 272 Kan. 1170, 1183, 39 P.3d 1 (2002) ("'[A] defendant will be found not responsible for the death which occurs during the commission of a felony only if an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death.'").

Even if we assume that the intervening act theory applies here, nothing in the record shows that any intervening event occurred. Nothing happened between Baggett's repeated requests for sex and his physical assault of J.H. that would reasonably imply Baggett no longer intended to rape J.H. after he attacked her. Nor does the evidence support Baggett's claim that he could have entered J.H.'s room with the intent to engage in a consensual sexual encounter or to take advantage of J.H.'s drunken state, as Baggett did not remember going to the Thurston Street house, and no evidence showed that he knew J.H. was drunk when he entered her bedroom. As a result, we find that a reasonable juror could conclude beyond a reasonable doubt that Baggett intended to rape J.H. when she was overcome by force or fear.

*Conclusion*

This court does not retry cases on appeal. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Based on the direct and circumstantial evidence presented at trial, a rational juror could have found Baggett guilty beyond a reasonable doubt of attempted rape of A.R. and J.H.

II.     *Did the State Commit Prosecutorial Error by Bolstering the Credibility of Its Witnesses During Closing Arguments?*

Baggett next contends that the State impermissibly bolstered the credibility of its witnesses during closing arguments by stating:  "[I]t's each of these separate cases that bolsters the other case." Baggett also argues the statement encouraged the jury to convict him using only propensity evidence and inference stacking. The State counters that the challenged remark, read in context, was not erroneous. Alternatively, the State argues that the prosecutor's error was harmless because the statement was not repeated, the evidence overwhelmingly established Baggett's guilt, and the district court properly cured the error by its answer to the jury's question.

*Basic Legal Principles*

Kansas appellate courts analyze claims of prosecutorial error by using a two-step process. *Chandler*, 307 Kan. 657, Syl. ¶ 5. First, we determine whether the prosecutor's actions fall outside the wide latitude afforded attorneys arguing at trial. If the prosecutor erred, we then consider whether the error is reversible—whether the prosecutor's actions prejudiced the defendant's right to a fair trial under the constitutional harmless error standard provided in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Chandler*, 307 Kan. 657, Syl. ¶¶ 6-7.

Prosecutors have considerable latitude in crafting arguments. See *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015). Although the permissible scope of argument is broad, it is not boundless. A prosecutor's comments during closing argument must "accurately reflect the evidence" and "accurately state the law." *State v. Raskie*, 293 Kan. 906, 917, 269 P.3d 1268 (2012). It is well established that prosecutors may not offer their personal opinions about the credibility of witnesses. *State v. Sean*, 306 Kan. 963, 979, 399 P.3d 168 (2017). Similarly, prosecutors cannot make comments intended to

13

bolster the credibility of their witnesses. *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015). They may, however, craft arguments that draw reasonable inferences from the evidence and explain to jurors what they should look for when assessing witness credibility. *Sean*, 306 Kan. at 979.

In reviewing these claims, we do not view a prosecutor's comments in isolation, as that can be misleading. Rather we consider the challenged statements in their full context. *State v. Naputi*, 293 Kan. 55, 59, 260 P.3d 86 (2011).

*Applicable Facts*

During closing argument, the prosecutor told the jury to consider Baggett's credibility and the credibility of the State's witnesses:

> "I would like to discuss these elements with you to show how you could have confidence that these crimes were committed by Tommie Baggett, the defendant. Ladies and gentlemen, as we go through the power point presentation and go through closing arguments I would like you to think about how you can assess the credibility of the defendant and the credibility of the different victims, [T.M., R.R., A.R., and J.H.]. It is for you, the members of the jury, to determine the credibility of a witness who has testified. You can use your common knowledge and your experience regarding matters to which a witness has testified to determine whether or not what they are saying is credible.
> "Ladies and gentlemen, *it's each of these separate cases that bolsters the other case, that makes them credible and makes you have confidence to find beyond a reasonable doubt that the defendant is guilty, because not only are these four cases connected by DNA, but they are connected together by other evidence.* Evidence that again gives you, the jury, confidence to find that the defendant Tommie Baggett is guilty of all of these charges." (Emphasis added.)

The prosecutor then recapped the evidence.

14

Defense counsel did not object to that argument. In closing, defense counsel contended that the State had failed to establish the crimes beyond a reasonable doubt. He implied that the State had consolidated Baggett's crimes into a single trial to impermissibly obtain convictions through cumulative consideration of the evidence. Still, defense counsel reminded the jury of its duty to consider the charges separately:

"Now, I know as the State acknowledged you've got four complaining witnesses here. Those cases could have been tried separately, but there is a reason that wasn't done. The State wants you to consider one case against the next. Have each of the cases bolster each other. But what you need to look at is Instruction No. 26. You're instructed to consider each crime that's charged against Tommie independently. He may be convicted or acquitted of any or all of the offenses that are charged."

In rebuttal, the prosecutor discussed the victims' individual testimonies and told the jury it could consider all the evidence to determine whether Baggett was guilty of the individual charges:

"Ladies and gentlemen, you can consider these cases all together. All the evidence that's been presented, the 911 call and everything, you can consider that all together. You have to decide each count separately if each element of each count was proven beyond a reasonable doubt, but you can use all of the evidence in the case against every count and every element for each offense that the State is alleging the defendant committed."

During deliberations, the jury asked the district court to clarify what the prosecutor's statement meant: "Can we have clarification on the statement in the prosecution's closing arguments about considering all evidence and testimonies as opposed to 'you must decide each charge separately on the evidence and the law applicable to it?'" After considering the parties' arguments on the issue, the district court responded:

15

"Members of the jury: My response and the answer to your question is if—or in your fact finding you should consider and weigh everything admitted into evidence on each separate charge.

"In addition, I will refer you to Instruction No. 2 and Instruction No. 26, which states that statements, arguments and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by the evidence, they should be disregarded.

"Instruction No. 26 states each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision on any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime must be stated in a verdict form signed by the presiding juror."

*Prosecutorial Error and Prejudice*

We assume, without finding, that the prosecutor erred by telling the jury that each separate case bolsters the other cases. Still, reversal is not warranted.

First, the prosecutor did not repeat the challenged statement. It was defense counsel who repeated the term "bolster" in his closing argument while arguing that the comment was improper and evidenced a vindictive prosecution. Still, defense counsel reminded the jury that it was required to consider the charges separately. And the prosecutor clarified on rebuttal that the jury was required to consider the charges separately but could consider all the evidence.

Second, the jury asked a good question about the prosecutor's statement and the district court properly responded to it. When a jury asks a question about the district court's instructions, the district court must respond in some meaningful manner or seek additional clarification or limitation of the request. *State v. Boyd*, 257 Kan. 82, 88, 891 P.2d 358 (1995). The district court met this requirement here. Although Baggett suggests the court had to list the evidence that applied to each separate count or tell the jury it

16

could not convict him based solely on propensity evidence, that assertion is conclusory and lacks legal support.

Third, the jury's question, coupled with its request for a readback of T.M. and J.H.'s testimonies, shows that the jury gave due consideration to the evidence, the applicable law, and its duty in determining Baggett's guilt. That the jury acquitted Baggett of some crimes shows it is unlikely that it convicted him based on his propensity to commit other crimes—a propensity-based verdict would likely have found the defendant guilty as charged.

Lastly, Baggett's main contention regarding the prosecutor's statement is that it improperly allowed the jury to infer intent for his attempted rapes of A.R. and J.H. by considering evidence of his attempted rape of R.R. But as shown in our discussion above, Baggett errs in claiming that none of the circumstances related to R.R. could be considered to convict him of the other two attempted rape charges. See *Ojeda*, 2012 WL 3289944, at *5 (finding "legally correct" a judge's answer that the jury could consider evidence of the defendant's rape of a victim a week earlier in the same location to determine his intent to rape another victim). True, "'the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.'" *Lowrance*, 298 Kan. at 297. But simply because various circumstances independently lead to the same inference does not mean inferences have been stacked. 298 Kan. at 298. Such is the case here.

The effect the prosecutor's statement had on Baggett's trial was harmless beyond a reasonable doubt. Baggett got a fair trial, so we affirm his convictions.

17

III.    *Did the District Court Abuse Its Discretion by Authorizing the State to Prosecute Baggett as an Adult?*

Baggett next contends that the district court abused its discretion by authorizing the State to prosecute him as an adult.

In reviewing a district court's ruling on a motion to authorize prosecution as an adult, we apply a dual standard of review: we evaluate the court's factual findings for substantial competent evidence, and the court's ultimate legal assessment of the statutory factors set out in K.S.A. 2017 Supp. 38-2347(d) for an abuse of discretion. "A district court abuses its discretion when: (1) no reasonable person would take its view; (2) its ruling is based on an error of law; or (3) substantial competent evidence does not support a factual finding on which the exercise of discretion is based." *State v. Vonachen*, 312 Kan. 451, 471, 476 P.3d 774 (2020). To the extent the question requires us to interpret a statute, our review is unlimited. See 312 Kan. at 471.

K.S.A. 2017 Supp. 38-2347(d) sets out eight factors a district court must consider when deciding whether to authorize adult prosecution of a juvenile:

> "(1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution;
> "(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
> "(3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted;
> "(4) the number of alleged offenses unadjudicated and pending against the juvenile;
> "(5) the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender under this code or the Kansas juvenile justice code and, if

18

so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

"(6) the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living or desire to be treated as an adult;

"(7) whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction under this code; and

"(8) whether the interests of the juvenile or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution.

"The insufficiency of evidence pertaining to any one or more of the factors listed in this subsection, in and of itself, shall not be determinative of the issue."

Baggett first contends that the district court's decision was based on legal error because the court failed to consider all eight of these factors. See *Makthepharak v. State*, 298 Kan. 573, 580, 314 P.3d 876 (2013) ("[F]ailure to properly consider the statutory factors is reversible error because there is no other way for the court to obtain jurisdiction over an adult prosecution of a juvenile.").

We review the district court's findings:

"The record clearly reflects that in 17 JV 72 the juvenile was charged with severity level 3 drug felonies and a severity level 5 drug felony times two, and in 18 JV 28 the juvenile is charged with rape, attempted rape, sodomy, aggravated battery, aggravated burglary. In total, I believe there were 11 or 12 counts of those types of offenses.

"Mr. Baggett was almost 17 years of age when the first alleged crimes took place. Was within a few days of being, or perhaps a month or two of being 18, when the last of the offenses were alleged to have taken place. The allegations in 18 JV 28 allege aggressive, premeditated crimes.

"The Court further would find that the juvenile services are not designed to address the needs of a juvenile 18 years of age with a violent past—alleged violent past.

19

And in fact, no services are available which are likely to rehabilitate this type of allegations. And in fact, I would note as a side note that this juvenile has received services through DCF and St. Francis for a number of years, and those services resulted in limited success or limited benefit.

"Mr. Baggett is now 18. He's expressed a desire to workers to be treated as an adult, and in fact he's acted as an adult living on his own. The source of his ability to do that, or I should say the source of funds that allowed him the ability to reside on his own are unknown, at least the evidence today would indicate it's unknown, but it's uncontroverted that he was residing on his own in an apartment.

"For those reasons and those findings the Court would find that juvenile prosecution or EJJ is not appropriate, and that he should be prosecuted under the criminal statutes for an adult, and that the proceedings filed under the juvenile code should then be dismissed. Which means we need to have it referred then to one of the magistrates for a preliminary hearing."

Comparing the district court's findings to the statutory factors, we disagree with Baggett's claim that the district court did not consider all the statutory factors.

Baggett next alleges that the district court should have weighed factors six and eight more in his favor, and that no reasonable person would have concluded that adult prosecution was appropriate. Baggett also argues that the district court lacked substantial competent evidence to support its factual findings that appropriate rehabilitative services were not available and that EJJ prosecution was not appropriate.

Baggett essentially invites us to weigh more heavily the evidence of his immaturity, and to replace the district court's reasonable opinion that Baggett benefitted little from the services he had received from the Kansas Department for Children and Families during the years Baggett was in foster care. But we cannot reweigh evidence when reviewing for substantial competent evidence. *Vonachen*, 312 Kan. at 471. And we must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting

20

evidence or other inferences that might be drawn from it. *State v. Gannon*, 298 Kan. 1107, 1175-76, 1179, 319 P.3d 1196 (2014).

The evidence sufficiently supports the district court's findings, including that Baggett's charged offenses were violent and premeditated. And we find no abuse of discretion in the court's legal assessment of the eight statutory factors set out in K.S.A. 2017 Supp. 38-2347(d). We thus affirm the district court's decision to allow adult prosecution.

IV.     *Is Remand Necessary to Establish a Restitution Payment Plan?*

Next, Baggett contends that the district court erred by failing to determine a method of payment for the $12,981.77 restitution it ordered. Baggett asserts that the statute in effect when he was sentenced in August of 2019 required the district court to order a restitution payment plan. See K.S.A. 2019 Supp. 21-6604(b); *State v. Roberts*, 57 Kan. App. 2d 836, 461 P.3d 77 (2020), *judgment summarily vacated and remanded by State v. Roberts*, No. 120,377, 2020 WL 8269363 (order filed September 29, 2020).

Typically, appellants cannot raise issues on appeal that they did not raise before the district court. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But Baggett claims the manner of imposing restitution makes his sentence illegal, and an illegal sentence can be raised at any time regardless of whether the issue was presented to the district court. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); see also K.S.A. 2020 Supp. 22-3504(a) ("The court may correct an illegal sentence at any time while the defendant is serving such sentence."). Restitution is part of a defendant's sentence. *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014).

A sentence is illegal when:  (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provisions, either in character or the term of

punishment; or (3) it is ambiguous about the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c); *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019). Baggett claims his sentence does not conform to the statutory provisions because at the time of his sentencing, K.S.A. 2019 Supp. 21-6604(b)(1) and (b)(2) required a district court to set a payment plan when ordering restitution, yet the district court failed to do so.

*The Change in the Law*

When Barrett was sentenced in August 2019, K.S.A. 2019 Supp. 21-6604(b) governed restitution orders. It stated in relevant part:

> "(1) . . . [T]he court shall order the defendant to pay restitution . . . unless the court finds compelling circumstances that would *render a plan of restitution unworkable*. . . . If the court *finds a plan of restitution unworkable*, the court shall state on the record in detail the reasons therefor.
> "(2) . . . If, after 60 days from the date restitution is ordered by the court, a defendant is found to be *in noncompliance with the plan established by the court for payment of restitution*, . . . the court shall assign an agent . . . to collect the restitution on behalf of the victim." (Emphases added.)

Based on the italicized language, a panel of this court held in February of 2020 that this statute required the district court to set a restitution plan. *Roberts*, 57 Kan. App. 2d at 845.

In response to *Roberts*, the Legislature amended K.S.A. 21-6604(b), effective June 11, 2020, by removing all references to a restitution plan. L. 2020, ch. 9, § 1. The amended version states:

22

"(1) . . . Restitution shall be due immediately unless: (A) The court orders that the defendant be given a specified time to pay or be allowed to pay in specified installments; or (B) the court finds compelling circumstances that would *render restitution unworkable*, either in whole or in part. . . . If the court *finds restitution unworkable*, either in whole or in part, the court shall state on the record in detail the reasons therefor.

"(2) . . . If, after 60 days from the date restitution is ordered by the court, a defendant is found to be *in noncompliance with the restitution order*, . . . the court shall assign an agent . . . to collect the restitution on behalf of the victim." (Emphases added.) K.S.A. 2020 Supp. 21-6604(b).

Baggett filed his appellate brief on June 25, 2020, relying on *Roberts*. But in September of 2020, the Kansas Supreme Court granted the petition for review in *Roberts*, summarily vacated the decision, and remanded it to our court to consider the legislative changes to K.S.A. 21-6604(b). We did so, then remanded to the district court so Roberts could file his motion in the district court by the December 2020 deadline the Legislature set.

"If a restitution order entered prior to the effective date of this act does not give the defendant a specified time to pay or set payment in specified installments, the defendant may file a motion with the court prior to December 31, 2020, proposing payment of restitution in specified installments. The court may recall the restitution order from the agent assigned pursuant to K.S.A. 20-169, and amendments thereto, until the court rules on such motion. If the court does not order payment in specified installments or if the defendant does not file a motion prior to December 31, 2020, the restitution shall be due immediately." K.S.A. 2020 Supp. 21-6604(b)(3).

The 2020 amendments also added a retroactivity clause: "The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." K.S.A. 2020 Supp. 21-6604(v).

*Baggett's Remedy*

Baggett filed his brief on June 25, 2020. His brief shows that he was aware of the June 11, 2020 statutory amendments and the December 31, 2020 deadline. Because the district court entered its restitution order before the effective date of the amendment and did not say when Baggett should pay his restitution, Baggett could have filed a motion in the district court requesting additional consideration of the issue. See *State v. McAlister*, 310 Kan. 86, 91, 444 P.3d 923 (2019) (defendant has right to receive benefit of any change in law that occurs while direct appeal is pending). Although the district court lost jurisdiction to consider matters in this case after Baggett perfected his appeal, Baggett could have requested a stay from this court to allow pursuit of such a claim. See *State v. Logan*, No. 122,116, 2021 WL 645929, at *4 (Kan. App. 2021) (unpublished opinion) (noting court previously granted appellant's request for stay to allow a K.S.A. 2020 Supp. 21-6604[b][3] motion). But Baggett did not ask this court to stay his appeal and did not move the district court for payment of restitution in specified installments before the December 31, 2020 deadline passed.

Because K.S.A. 2020 Supp. 21-6604(b)(3) stipulates that a defendant seek relief in the district court, not an appellate court, Baggett's remedy lies there. As Baggett failed to avail himself of the statutory right to file a motion in the district court or request a stay from this court to do so before the deadline, K.S.A. 2020 Supp. 21-6604(b)(3) now provides no avenue whereby he is entitled to request that his restitution be paid in specified installments. Finding the statutory remedy outlined in K.S.A. 2020 Supp. 21-6604(b)(3) unavailable, we affirm Baggett's sentence, including restitution.

V.    *Did the District Court Err in Sentencing Baggett Without First Requiring the State to Prove an Aggravating Factor Beyond a Reasonable Doubt?*

Finally, Baggett argues the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by sentencing him to the aggravated sentence within the applicable sentencing range, instead of imposing the standard or mitigating sentence. Baggett contends that before the district court could impose an aggravated sentence, the State had to prove an aggravating circumstance to a jury beyond a reasonable doubt, citing *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

But, as Baggett concedes, our Supreme Court rejected this argument in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008). There, it held that "[a] sentence to any term within the range stated in a Kansas sentencing guidelines presumptive grid block does not violate *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), or *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)." 286 Kan. 824, Syl. ¶ 5. Baggett raises the issue here to preserve it for federal review. But see *Gaona v. Kansas*, No. 5:19-cv-03262-HLT, 2021 WL 3488392, at *10 (D. Kan. 2021) (joining previous federal district courts in finding *Johnson* ruling reasonably applied *Apprendi* and *Cunningham*); *United States v. Smith*, 371 Fed. Appx. 901, 904 n.1 (10th Cir. 2010) (unpublished opinion) (finding *Cunningham* does not affect judicial fact-finding inside statutory range).

Because we find no indication the Kansas Supreme Court is departing from this position, we are duty-bound to follow established precedent. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Consequently, Baggett's sentence is a statutorily and constitutionally permissible presumptive sentence which cannot be

25

appealed. See K.S.A. 2020 Supp. 21-6820(c)(1).

Affirmed.